G.M. HOUSER, INC. d/b/a Houser Concrete Company and its successors G.M. Houser, Ltd., Houser Materials, L.L.C., Appellants

v.

David E. RODGERS and Kim Rodgers, Appellees.

No. 05–05–01330–CV.

Court of Appeals of Texas, Dallas.

Oct. 26, 2006.

---

Charles Wade Arnold, Ryan Logan Valdez, Cantey & Hanger, L.L.P., Fort Worth, for appellant.

D. Craig Brinker, James Giries, Henslee Fowler Hepsworth & Schwartz, L.L.P., Dallas, for appellees.

Before Chief Justice THOMAS and Justices LANG and MAZZANT.

## OPINION ON MOTION

Opinion by Justice LANG.

The Court has before it appellants' July 5, 2006 second motion to set the supersedeas bond at fifty percent of the judgment debtors' net worth pursuant to Texas Rule of Appellate Procedure 24.2(a)(1). We entertain this motion, pursuant to rule of appellate procedure 24.4, and decide whether the trial court abused its discretion in determining appellants' net worth

to be $20,000 each and in setting the supersedeas bond for each appellant at $10,000.

On this record, we conclude the trial court abused its discretion and we grant appellant's motion as follows: (a) we conclude the net worth of G.M. Houser, Ltd. is a negative $333,516 and the net worth of Houser Materials, L.L.C. is $2688; (b) we reverse the trial court's June 30, 2006, order fixing security for supersedeas; and (c) we render an order that the security for supersedeas for G.M. Houser, Ltd. be set at $0, and the security for supersedeas for Houser Materials, L.L.C. be set at $1344, which is fifty percent of Houser Materials, L.L.C.'s net worth.

## I.

### Factual and Procedural Background

When this motion was brought, appellants had perfected their appeal of a judgment in favor of appellees in the amount of $685,840.10, plus post-judgment interest. On March 2, 2006, the trial court conducted an initial hearing on appellants' motion to fix the amount of the supersedeas bond at fifty percent of appellants' net worth. Appellants and appellees offered documentary evidence, but no oral testimony. The documentary exhibits were admitted into evidence without objection.

The evidence presented by appellants included compilation balance sheets, prepared by their accountant, setting forth the assets and liabilities of each appellant. The accountant stated in his cover letters that "[a] compilation is limited to presenting in the form of a financial statement, information that is the representation of management. We have not audited or reviewed the accompanying balance sheet and, accordingly, do not express an opinion or any form of assurance on it."[1] Appel-

1. Separate compilation reports were prepared for G.M. Houser, Ltd. and Houser Materials, L.L.C. The cover letter for each report contained the same statement by the accountant.

lees offered Exhibit 1, which included forty-two sub-parts. Appellees contend the documents in that exhibit show ownership of the appellant companies by Gerald Houser, individually, that certain assets of appellants were transferred to Gerald Houser, and other financial information regarding appellants. Counsel for each of the parties argued what they contended the documentary evidence showed.

After the conclusion of the hearing, the trial court signed an order dated June 30, 2006, that stated the net worth of each appellant was $20,000, and set each appellant's supersedeas bond at $10,000. No findings of fact were made. Then, on July 5, 2006, appellants filed a motion in this Court complaining of the trial court's order and requesting that we set the supersedeas bond at fifty percent of the judgment debtors' respective net worth consistent with appellants' proof. Appellants claimed, as they had in the trial court, the net worth of G.M. Houser, Ltd. is a negative $333,516 and the net worth of Houser Materials, L.L.C. is $2688. Initially, appellees contended appellants failed to carry their burden to prove the net worth of appellants.

We ordered the trial court to enter written findings of fact and conclusions of law setting forth the basis for its determination of appellants' net worth.[2] *See* TEX. R.APP. P. 24.4(d). In response, the trial court held a second hearing on July 20, 2006. No additional evidence was admitted at this hearing, but the trial court entertained argument of counsel. Then, the trial court made written findings of fact, dated August 8, 2006, including findings as to historic ownership of each appellant, interrelationships as to each appellant, transfer of assets between appellants and Gerald M. Houser, individually, which the trial court concluded were fraudulent transfers, and the companies' assets and liabilities, including a balance sheet of G.M. Houser, Ltd. complied by the trial court.[3]

Those findings recited, among other things, that based upon the financial data provided to the Internal Revenue Service in tax returns of G.M. Houser, Ltd. and other evidence presented, the net worth of G.M. Houser, Ltd. was $1,811,742. However, in addition, the findings stated that G.M. Houser, Ltd. and Houser Materials, L.L.C. each had a "minimum of $20,000.00 assets." The trial court's original order of June 30, 2006, remained unaltered, which set the net worth for each appellant at $20,000 and bond for each at $10,000.

Now, after the findings of the trial court, in subsequent briefing to this Court, the arguments of the parties have sharpened. Appellants specify their contentions as follows: (a) the trial court's determination that certain transfers were "fraudulent transfers" usurps the jury's function in any subsequent trial of appellees' severed claims against Gerald Houser, individually; and (b) the record does not contain legally or factually sufficient evidence to support the trial court's finding and calculations that the transfers constituted fraudulent transfers or the conclusion that the supersedeas bonds should be set at $10,000 for each appellant. According to appellants, the trial court abused its discretion in concluding each appellant had net worth of $20,000, and setting the supersedeas bond at $10,000 for each appellant.

In response, appellees argue the trial court's order finding $20,000 net worth for each appellant and setting the supersedeas bonds at $10,000 each was erroneous.

2. When appellants' motion was filed we denied their request for a temporary order suspending enforcement of the judgment.

3. The findings of fact and conclusions of law are reproduced in Appendix A to the opinion.

Further, they specifically contend: (1) appellants did not meet their burden under rule 24.2(c)(3) because their compilation balance sheets have been "discredited" and their evidence has been "controverted" by appellees; and (b) the evidence supports the trial court's findings and conclusions (which are separate from the court's earlier order finding a $20,000 net worth for each appellant) that G.M. Houser, Ltd.'s net worth is $1,811,074. Appellees urge us to calculate the supersedeas bond based on that $1,811,074 net worth finding.

## II.

### Standard of Review and Applicable Law–Security for Judgments Pending Appeal

When a judgment is for money, the amount of the security must equal the sum of: (1) the amount of compensatory damages awarded in the judgment; (2) interest for the estimated duration of the appeal; and (3) costs awarded in the judgment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 52.006(a) (Vernon Supp.2006); TEX. R.APP. P. 24.2(a)(1). The amount of the security may not, however, exceed the lesser of (1) fifty percent of the judgment debtor's net worth or (2) $25 million. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 52.006(b); TEX.R.APP. P. 24.2(a)(1)(A), (B).

■■■ "When a judgment creditor files a contest to the judgment debtor's net worth, the trial court must hold a hearing and 'issue an order that states the debtor's net worth and states with particularity the factual basis for that determination.'" *In re Smith*, 192 S.W.3d 564, 568 (Tex.2006) (orig. proceeding) (quoting TEX.R.APP. P. 24.2(c)(3)). Net worth is calculated as the difference between total assets and total liabilities as determined by generally accepted accounting principles. *See Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 915 (Tex.App.-

Houston [14th Dist.] 2005, no pet.). In setting the amount of supersedeas security pending appeal, the trial court is required to consider the separate financial condition of each judgment debtor. *See* TEX.R.APP. P. 24.2(c)(3); *In re Smith*, 192 S.W.3d at 569; *Ramco Oil & Gas, Ltd.*, 171 S.W.3d at 912.

■■■ On the motion of a party, an appellate court may review the sufficiency or excessiveness of the amount of security. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 52.006(d); TEX.R.APP. P. 24.4(a). The grounds for review may be based both on conditions as they existed at the time the trial court signed the order and on changes in those conditions afterward. TEX.R.APP. P. 24.4(b). We review the trial court's determination of the amount of security under an abuse of discretion standard. *See Isern v. Ninth Court of Appeals*, 925 S.W.2d 604, 606 (Tex.1996) (orig. proceeding) (per curiam); *Ramco Oil & Gas, Ltd.*, 171 S.W.3d at 910. The trial court abuses its discretion if the evidence is legally or factually insufficient to support its findings. *See In re Smith*, 192 S.W.3d at 570; *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998); *Ramco Oil & Gas, Ltd.*, 171 S.W.3d at 910. If we conclude the trial court abused its discretion, we may order the amount of the security decreased or increased in an amount not to exceed the lesser of fifty percent of the judgment debtor's net worth or $25 million. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 52.006(d); TEX.R.APP. P. 24.4(a).

The judgment debtors have the burden of proof to establish net worth. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 52.006(c); TEX.R.APP. P. 24.2(c)(3). Therefore, to show the trial court abused its discretion based on the legally insufficient evidence, the judgment debtors must show the evidence conclusively establishes, as a matter of law, all vital facts in support of their

position. *See Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (per curiam); *Ramco Oil & Gas, Ltd.*, 171 S.W.3d at 910.

■ In determining whether the evidence is legally sufficient to support the trial court's determination of net worth, we consider all of the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005); *Ramco Oil & Gas, Ltd.*, 171 S.W.3d at 910. We must credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *See City of Keller*, 168 S.W.3d at 827; *Ramco Oil & Gas, Ltd.*, 171 S.W.3d at 910. Finally, we must determine whether the evidence before the court would allow reasonable and fair-minded people to find the facts at issue. *See City of Keller*, 168 S.W.3d at 827; *Ramco Oil & Gas, Ltd.*, 171 S.W.3d at 910.

■ In reviewing the factual sufficiency of the evidence to support the trial court's finding of net worth, we examine the entire record, considering the evidence both in favor of and contrary to the challenged finding. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Ramco Oil & Gas, Ltd.*, 171 S.W.3d at 910. We set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Ramco Oil & Gas, Ltd.*, 171 S.W.3d at 910.

In conducting our review of both the legal and factual sufficiency of the evidence, we are mindful that the trial court, as fact finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819; *Ramco Oil & Gas, Ltd.*, 171 S.W.3d at 910. We may not substitute our judgment for the fact find-

er's, even if we would reach a different answer on the evidence. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998).

## III.

### Discussion and Analysis

**a. Appellants' Contention that Trial Court Usurped Jury's Findings in Subsequent Trial against Gerald Houser**

■ Appellants contend the conclusions of the trial court regarding the transfer of assets by appellants to Gerald Houser may "offset the contemplated second trial" of the several claims of appellees against Gerald Houser, individually. Those claims, severed by agreement from the appeal to this Court and separately set for trial, include allegations that Gerald Houser is the "alter ego" of appellants. Accordingly, appellants argue "the trial court's findings and conclusions improperly usurp the jury's function and adjudicate Mr. Houser's alleged culpability without trial." We cannot agree.

The proceeding we now review is exclusively a post-judgment process designed to determine appellants' net worth solely for the purpose of setting supersedeas bonds pending appeal. Neither the trial court, nor this Court, make any determinations that may be used to enforce the judgment against any non-judgment debtor. *See In re Smith*, 192 S.W.3d at 568–69 (post-judgment alter ego finding in post-judgment net worth proceeding may not be used to enforce judgment against non-judgment debtor. Findings may be used only to determine judgment debtor's net worth for purpose of rule of appellate procedure 24).

### b. The Net Worth and Bond Determinations

The record from the two hearings conducted by the trial court reflects the evi-

dence consisted of appellants' compilation balance sheets and appellees' Exhibit 1, which included forty-two sub-exhibits. No testimony was offered. Appellees' Exhibit 1 includes, among other documents, corporate records showing Gerald Houser's involvement in and ownership of the appellants, copies of a $750,000 promissory note and assignment of it to Gerald Houser, a list of payments totaling $1,179,250.35 to Gerald Houser, and a valuation of certain real estate at $369,590 and the transfer of title of the real estate to Gerald Houser.

At both hearings, appellants argued the net worth of G.M. Houser, Ltd. is a negative $333,516 and the net worth of Houser Materials, LLC is $2688. Appellees argued that Exhibit 1 provided sufficient evidence for the court to determine the assets described in Exhibit 1 were transferred to Gerald Houser, individually, in violation of the Uniform Fraudulent Transfer Act. See Tex. Bus. & Com.Code Ann. §§ 24.001–.013 (Vernon 2002 & Supp.2006). Further, appellees argued that: (a) the value of those assets, fraudulently transferred, was omitted from the compilation balance sheets of appellants; (b) for purposes of setting net worth, the court could construct a balance sheet for G.M. Houser, Ltd. in its findings, which must include those fraudulently transferred assets; and (c) in order to determine the supersedeas bond amount, the trial court can apply the applicable rule and statute to the net worth shown in the constructed balance sheet for G.M. Houser, Ltd. Finally, appellees contend they have controverted the compilation balance sheet evidence of appellants with the fraudulent transfer evidence and placed in issue the credibility of the balance sheets.

### c. Fraudulent Transfer— Applicable Law

A transfer made by a debtor is fraudulent as to a creditor if the transfer was made with the actual intent to hinder, delay or defraud the creditor or where the debtor did not receive a reasonably equivalent value in exchange for the transfer. See Tex. Bus. & Com.Code Ann. § 24.005(a)(1), (2) (Vernon 2002). The judgment creditor has the burden to prove the fraudulent transfer by a preponderance of the evidence. See Mladenka v. Mladenka, 130 S.W.3d 397, 405 (Tex.App.-Houston [14th Dist.] 2004, no pet.); First Nat'l Bank of Seminole, Tex. v. Hooper, 48 S.W.3d 802, 806 (Tex.App.-El Paso 2001), rev'd on other grounds, 104 S.W.3d 83 (Tex.2003). Direct proof of fraudulent intent is often unavailable. Mladenka, 130 S.W.3d at 405. Therefore, circumstantial evidence may be used to prove fraudulent intent. Id. (citing Roland v. United States, 838 F.2d 1400, 1402–03 (5th Cir. 1988)). Section 24.005(b) of the business and commerce code sets out a non-exhaustive list of "badges" of fraud to be considered in determining whether a transfer was made with actual intent to defraud. See Tex. Bus. & Com.Code Ann. § 24.005(b)(1)-(11). They include the following:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.*

■ An individual badge of fraud is not conclusive, but "a concurrence of many [badges] in the same case will always make out a strong case of fraud." *See Adams v. Wilhite,* 636 S.W.2d 851, 856 (Tex.App.-Tyler), *rev'd on other grounds,* 640 S.W.2d 875 (Tex.1982). *See also Tex. Sand Co. v. Shield,* 381 S.W.2d 48, 53 (Tex.1964).

■ A finding that transfers were fraudulent may be based upon evidence the transfer was "without receiving a reasonably equivalent value in exchange." *See* Tex. Bus. & Com.Code Ann. §§ 24.005(a)(2), 24.006(a). While evidence of a transfer to an insider is one factor to consider in determining actual intent to defraud, that fact alone does not support a conclusion the transfer constitutes a fraudulent transfer. *See* Tex. Bus. & Com.Code Ann. § 24.005(b)(1) (in determining actual intent to defraud, consideration may be given, among other factors, to whether transfer to insider); *Adams,* 636 S.W.2d at 856 (evidence of individual badge of fraud not conclusive). It is appellees' burden to offer evidence suggesting the elements of fraudulent transfer as to each transfer. *See Hooper,* 48 S.W.3d at 806 (creditor has burden to prove fraudulent intent of debtor); *Rucker v. Steelman,* 619 S.W.2d 5, 7 (Tex.Civ.App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.).

### d. The Findings

The findings of the trial court describe transfers of assets, concluding they are fraudulent transfers, including one promissory note in the "principal amount of $750,000 and total proceeds of $725,000," the proceeds of one promissory note in the amount of $1,050,000 "with total proceeds being $1,050,000," and a parcel of real estate "valued" at $369,590. In our analysis, we focus on the elements of proof necessary for a finding that a transfer constitutes a fraudulent transfer under the sections of the Uniform Fraudulent Transfer Act cited by the trial court in its findings.[4] The trial court's findings and conclusions determine that the identified transfers were fraudulent under section 24.005(a)(1) and (2)[5] and section 24.006(a).[6]

4. The trial court concluded the transfers were fraudulent under the act in at least three paragraphs. *See infra* Appendix A, paragraphs I, J, and K.

5. Section 24.005(a) provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business transaction; or

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Tex. Bus. & Com.Code Ann. § 24.005(a)(1), (2)(A), (B) (Vernon 2002).

6. Section 24.006(a) provides:

In their September 1, 2006 letter brief, appellants remain consistent with their earlier position that "the record lacks evidence to support the legal conclusion that any of the transfers Houser Concrete made were fraudulent." However, appellees changed their position slightly from that set forth in their original response when they filed their September 11, 2006 letter brief. Now, appellees contend the record supports the findings of fraudulent transfers and the net worth for G.M. Houser, Ltd. found by the trial court of $1,811,074. They also contend they have described "and controverted" appellants' evidence of net worth. Finally, they argue the trial court erred in declaring the net worth to be $20,000 for each appellant and calculating the supersedeas bond to be $10,000 for each appellant.

■ At this point, we will address the contentions of appellees as to what the evidence shows keeping in mind all of their contentions. First, appellees contend the findings that Gerald Houser is an "insider" is sufficient proof to support the findings of fraud. According to appellees, section 24.005(b)(1) of the business and commerce code provides "[t]ransfers to an insider is evidence of intent to defraud creditors." Although, before us, appellants do not contest the findings that Gerald Houser is an "insider," we cannot agree with appellees' assertion that Gerald Houser's insider status is sufficient to support the conclusion that the asset transfers are fraudulent. Section 24.005(b) provides that in determining actual intent to defraud, "consideration may be given, *among other factors*, to whether" the transfer or obligation was to an insider. *See* Tex. Bus. & Com.Code Ann. § 24.005(b)(1) (emphasis added). Gerald Houser's insider status, alone, is insufficient to support the trial court's numerous fraudulent transfer conclusions.

■ Second, appellees argue the record supports findings that no reasonably equivalent value was given for the assets they assert were fraudulently transferred to Gerald Houser. We recognize that evidence there was no reasonably equivalent value is relevant in determining actual fraudulent intent under section 24.005(a)(1) and section 24.005(b)(8), a fraudulent transfer finding under section 24.005(a)(2), or a fraudulent transfer finding under section 24.006(a). Once again, sections 24.005(a)(1) and (2) and 24.006(a) were cited by the trial court in his finding and conclusion regarding fraudulent transfers.

■ Appellees have identified for us some evidence they contend supports findings of "no reasonably equivalent value." We address these arguments as follows:

(a) As to the $750,000 note, appellees assert Exhibit 1 shows the transfer occurred. The assignment of the $750,000 promissory note in the record states it was "for and in consideration of the foregoing recitals, and other good and valuable consideration, the receipt and sufficiency which is hereby acknowledged and confessed. . . ." However, we are cited to no other evidence. The documentary evidence does support the finding that the note was transferred, but there is no evidence of the absence of reasonably equivalent value exchanged for the transfer. The recitation of consideration in the assignment document quoted above is not contradicted.

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
Tex. Bus & Com.Code Ann. § 24.006(a).

(b) As to the parcel of real estate, appellees cite us to a letter in the record addressed to Gerald Houser from G.M. Houser, Ltd., dated February 26, 2002. The letter states, in part, the real estate is valued at $369,590.00 and is transferred "[a]s a distribution with respect to our ownership interest as the sole limited partner in G.M. Houser, Ltd. . . . ." Appellees argue, "A distribution is a return on investment and, as such, indicates that no reasonably equivalent value was received." We are cited to no case law on this proposition nor are we cited to evidence in the record of the absence of reasonably equivalent value. The documentary evidence supports the finding that the real estate was transferred to Gerald Houser, but, as with the $750,000 note, the recitation of consideration is not contradicted. There is no evidence in the record that there was no reasonably equivalent value exchanged.

(c) Appellees contend the transfer of the proceeds of the promissory note totaling $1,179,250.35 was without reasonably equivalent value. They assert that "G.M. Houser, Ltd. made net distributions of its assets in the amount of $1,179,280.35 to Gerald Houser . . . without receiving reasonably equivalent value in exchange." In support of that statement, we are cited only to a list in Exhibit 1 that sets forth payments totaling $1,179,280.35. This document bears this title at the top:

HOUSER LTD
RECAP OF PAYMENTS TO GERALD HOUSER
OCT 2000 THRU MAY 2001
FROM MERRILL LYNCH CMA

The specific source of these payments is not identified. The consideration, or lack thereof, for the payments is not identified. Of concern to us is the fact that there is no finding of the trial court identifying payments in the aggregate amount of $1,179,280.35. We note that appellees do not discuss at all the findings of the trial court of the transfer of a promissory note in the principal amount of $1,050,000, and "total proceedings being $1,050,000." Our review of the record does not reveal documentary evidence reflecting such a note, nor is the note linked by argument in the briefing to any other evidence. So, on the one hand, there is no finding regarding the payments of $1,179,280.35 asserted by appellees to be fraudulently transferred. On the other hand, there is no evidence in the record to support the transfer of the $1,050,000 promissory note found by the trial court to be a fraudulent transfer.

Now, we address the balance sheet of G.M. Houser, Ltd. constructed by the trial court in its findings. That balance sheet specifically includes the assets the trial court found were fraudulently transferred to Gerald Houser, i.e., the two promissory notes and the real estate parcel. The trial court used the balance sheet to calculate the difference between the value of the assets and the liabilities of G.M. Houser, Ltd., i.e., the net worth of $1,811,742. As described above, the conclusions of the trial court that the asset transfers constituted fraudulent transfers were not supported by evidence in the record. Accordingly, the balance sheet and the net worth finding of $1,811,742, being dependent on the fraudulent transfer findings, are, likewise, unsupported. However, the compilation balance sheets for each of the appellants does, in fact, set out assets and liabilities for each. Although appellees contend those balance sheets are unreliable, the net worth, positive or negative, can be readily calculated by finding the difference between the assets and the liabilities stated for each. Those sums are as argued by appellants: a negative net worth of $333,576 for G.M. Houser, Ltd. and a positive net worth of $2688 for Houser Materials, L.L.C.

All parties agree the trial court erred in its June 30, 2006, order in finding each

appellant's net worth is $20,000. Further, they are unified in the position there is no evidence in the record to support those conclusions. We agree. Our independent review of the record reveals the conclusion to set the net worth at $20,000 for each appellant was based on the trial court's stated reasoning in the reporter's record that "because of the uncertainty of what ... was presented," the bond of $10,000 was "fair and appropriate."[7]

Having applied the applicable standard of review, we conclude the evidence is legally insufficient to support the order of the trial court concluding the net worth of each appellant was $20,000 and that, pursuant to rule of appellate procedure 24.2(a)(1)(A), (B) and section 52.006(b)(1) of the civil practice and remedies code, the supersedeas bond were $10,000 each. Therefore, we conclude the trial court abused its discretion in finding the net worth of each appellant to be $20,000 and setting the amount of security for supersedeas for each appellant at $10,000.

After reviewing the record as a whole, we conclude appellees' evidence did not prove the transfers of the enumerated assets were fraudulent transfers under chapter 24 of the business and commerce code. The fact that appellees' presentation to the trial court raised questions about the compilation balance sheets of appellants and caused the trial court to be "skeptical" of

them, is not sufficient to controvert appellants' evidence of their net worth. Accordingly, appellants have met their burden under section 52.006(c) of the civil practices and remedies code and rule of appellate procedure 24.2(c)(3) to establish as a matter of law that their net worth was as they set forth in their motion, to-wit: the net worth of G.M. Houser, Ltd. is negative $333,516, and the net worth of Houser Materials, L.L.C. is $2688.

## IV.

### Conclusion

On this record, we conclude the net worth of G.M. Houser, Ltd. is a negative $333,516 and the net worth of Houser Materials, L.L.C. is $2688. We reverse and render the trial court's June 30, 2006 order fixing security for supersedeas. Therefore, we order that the security for supersedeas for G.M. Houser, Ltd. is set at $0, and the security for supersedeas for Houser Materials, L.L.C. is set at $1344, which is fifty percent of Houser Materials, L.L.C.'s net worth.

### *APPENDIX A*

### FINDINGS OF FACT & *CONCLUSIONS OF LAW FOR THE PURPOSE OF SETTING SECURITY FOR SUPRESEDEAS*

The Trial Court makes the following findings of fact and conclusions of law for the

---

7. The record of the first hearing reflects that in response to the argument of appellees' counsel that the exhibits showed the transfers were without reasonably equivalent value, the trial judge repeatedly said he understood the argument, but asked appellees' counsel at least twice what the evidence was as to the consideration for the transfers to Gerald Houser, and commented he did not know "how I get there from here." The judge indicated he was "skeptical" of the compilation statement, but was unsure how to "come up with something."

When the trial court conducted the second hearing after this Court ordered the trial court to provide findings of fact and conclusions of law, the court again commented on the inadequacy of appellees' evidence. The trial court said,

Now, I thought it was pretty clear, from my ruling following the March 2nd, [sic] is that I didn't think the plaintiff had got there. But because of the uncertainty of what I thought was presented is that I thought a fair and appropriate fixing of $10,000, as to the two judgment debtors, for supersedeas was appropriate.

purpose of setting security for supersedeas.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### A. INSIDER

1. Gerald M. Houser[8] was a director of debtor G.M. Houser, Inc.

2. Gerald M. Houser was an officer of debtor G.M. Houser, Inc.

3. Gerald M. Houser was sole person in control of G.M. Houser, Inc.

4. At all relevant times Gerald M. Houser was an insider of G.M. Houser, Inc. as defined by TEX. BUS. & COM.CODE § 24.[0]02(7)(B).

5. Gerald M. Houser is the registered agent of Houser Materials, L.L.C.

6. Gerald M. Houser is the sole member of Houser Materials, L.L.C.

7. Gerald M. Houser was the organizer of Houser Materials, L.L.C.

8. Gerald M. Houser owns a 100% interest in Houser Materials, L.L.C.

9. Gerald M. Houser is an officer of Houser Materials, L.L.C.

10. Gerald M. Houser is the sole person in control of Houser Materials, L.L.C.

11. At all relevant times Gerald M. Houser was an insider of Houser Materials, L.L.C. as defined by TEX. BUS. & COM.CODE § 24.[0]02(7)(B).

12. Gerald M. Houser is the sole person in control of G.M. Houser, Ltd.

13. At all relevant times Gerald M. Houser was an insider of G.M. Houser, Ltd. as defined by TEX. BUS. & COM. CODE § 24.[0]02(7)(C).

14. Houser Materials, L.L.C. is a general partner of G.M. Houser, Ltd.

15. At all relevant times Houser Materials, L.L.C. was an insider of G.M. Houser, Ltd. as defined by TEX. BUS. & COM.CODE § 24.[0]02(7)(C).

#### B. CLAIM

1. Under TEX. BUS. & COM.CODE § 24.002(3), "Claim" means a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

2. David E. Rodgers[ ] has a valid and subsisting claim against G.M. Houser, Inc. and its successors G.M. Houser, Ltd. and Houser Materials, L.L.C. which incepted on July 13, 1999.

#### C. NOTICE

1. G.M. Houser, Inc., its successors G.M. Houser, Ltd. and Houser Materials, L.L.C. and their officers and directors had notice of David E. Rodgers['s] claim against them on or shortly after July 13, 1999.

#### D. CREDITOR

1. Under TEX. BUS. & COM.CODE § 24.002(4), "Creditor" means a person, including a spouse, minor, person entitled to receive court or administratively ordered child support for the benefit of a child, or ward, who has a claim.

2. David E. Rodgers was at all relevant times the creditor of G.M. Houser, Inc., G.M. Houser, Ltd., and Houser Materials, L.L.C. (the "debtors").

---

8. [FN1 in findings]: Gerald M. Houser individually was a party defendant from the inception of litigation. His liability, if any, is yet to be determined as a result of severance, and is predicated upon a finding creating vicarious liability.

### E. FRAUDULENT TRANSFERS

1. Subsequent to having notice of a claim against it, G.M. Houser, Ltd. and Houser Materials, L.L.C. made transfers that were fraudulent as [to] their creditors within the meaning of TEX. BUS. & COM.CODE § 24.005(a)(1)-(a)(2) and § 24.006(a).

### F. TRANSFERS

1. Under TEX. BUS. & COM.CODE § 24.002(12), "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance. The term does not include a transfer under a disclaim filed under Section 37A, TEXAS PROBATE CODE, or Section 112.010, PROPERTY CODE.

2. G.M. Houser, Ltd. and Houser Materials, L.L.C. made the following transfers to Gerald M. Houser, an insider, that were fraudulent as to their creditor David E. Rodgers.

   a) G.M. Houser, Ltd.'s assignment of the balance of proceeds of the $750,000 promissory note payable to it by Lattimore Materials Company, L.P., effective July 1, 2001, total proceeds being $725,000 occurring on, or about July 1, 2001.

   b) G.M. Houser, Ltd.'s transfer of proceeds from the $1,050,000 promissory note payable to it by Lattimore Materials Company, L.P., total proceeds being $1,050,000 occurring between April 10, 2001 and December 31, 2001.

   c) G.M. Houser, Ltd.'s transfer of real property located at 1611 Highway 276, Rockwall, Texas valued at $369,590 on, or about February 26, 2002.

3. G.M. Houser, Ltd. fraudulently transferred assets with a fair market value of $2,144,590 to Gerald M. Houser.

### G. REASONABLY EQUIVALENT VALUE

1. Under TEX. BUS. & COM.CODE § 24.004(d), "reasonably equivalent value" includes without limitation, a transfer or obligation that is within the range of value for which the transferor would have sold the assets in an arms length transaction.

2. G.M. Houser, Ltd. did not receive reasonably equivalent value in exchange for the assignment of the balance of proceeds of the $750,000 promissory note payable to it by Lattimore Materials Company, L.P., effective July 1, 2001, total proceeds being $725,000 occurring on, or about July 1, 2001.

3. G.M. Houser, Ltd. did not receive reasonably equivalent value in exchange for the transfer of proceeds from the $1,050,000 promissory note payable to it by Lattimore Materials Company, L.P., total proceeds being $1,050,000 occurring between April 10, 2001 and December 31, 2001.

4. G.M. Houser, Ltd. did not receive reasonably equivalent value in exchange for the transfer of real property located at 1611 Highway 276, Rockwall, Texas valued at $369,590 on, or about February 26, 2002.

### H. INSOLVENCY

1. Under TEX. BUS. & COM.CODE § 24.00[3](a), "Insolvency" means the sum of the debtor's debts is greater than all the debtor's assets at a fair valuation.

2. As a result of G.M. Houser, Ltd.'s and Houser Materials, L.L.C.'s aforementioned fraudulent transfers, G.M. Houser, Ltd. became insolvent, or was

insolvent at the time of transfer as defined by TEX. BUS. & COM.CODE § 24.003(a).

## I. TEXAS BUSINESS & COMMERCE CODE § 24.005(a)(1)

1. Under section 24.005(a)(1) of the Texas Bus. & Com.Code, a transfer is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made, if the debtor made it with actual intent to hinder, delay, or defraud its creditors.

2. G.M. Houser, Ltd. and Houser Materials, L.L.C. made fraudulent transfers of G.M. Houser, Ltd.'s assets to Gerald M. Houser with the actual intent to hinder, delay and defraud its creditors.

3. David E. Rodgers has a valid and subsisting claim against G.M. Houser, Inc. and its successors, G.M. Houser, Ltd. and Houser Materials, L.L.C. which arose on July 13, 1999.

4. G.M. Houser, Inc., G.M. Houser, Ltd., and Houser Materials, L.L.C. were at all relevant times the debtor of David E. Rodgers as defined by Tex. Bus. & Com.Code § 24.002.

5. David E. Rodgers was at all relevant times a creditor of G.M. Houser, Inc., G.M. Houser, Ltd. and Houser Materials, L.L.C. as defined by TEX. BUS. & COM.CODE § 24.002.

6. The debtors made transfers to Gerald M. Houser, an insider.

7. Before the transfers were made the debtors had been threatened with suit.

8. The transfers made were of substantially all of the debtors' assets.

9. The debtors removed assets[.]

10. The debtors did not receive reasonably equivalent value in exchange for the transfers.

11. G.M. Houser, Ltd. became insolvent shortly after the transfers were made.

12. G.M. Houser, Ltd. was insolvent at the time of [sic] subsequent transfers were made.

13. The transfers occurred shortly before a substantial debt was incurred.

14. G.M. Houser, Ltd. did not receive reasonably equivalent value in exchange for the assignment of the balance of proceeds of the $750,000 promissory note payable to it by Lattimore Materials Company, L.P., effective July 1, 2001, total proceeds being $725,000 occurring on, or about July 1, 2001.

15. G.M. Houser, Ltd. did not receive reasonably equivalent value in exchange for the transfer of proceeds from the $1,050,000 promissory note payable to it by Lattimore Materials Company, L.P., total proceeds being $1,050,000 occurring between April 10, 2001 and December 31, 2001.

16. G.M. Houser, Ltd. did not receive reasonably equivalent value in exchange for the transfer of real property located at 1611 Highway 276, Rockwall, Texas valued at $369,590 on, or about February 26, 2002.

## J. TEXAS BUSINESS & COMMERCE CODE § 24.005(a)(2)

1. Under section 24.005(a)(2) of the Texas Bus. & Com.Code, a transfer is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made, if the debtor made the transfer:

(1) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

2. David E. Rodgers has a valid and subsisting claim against G.M. Houser, Inc., and its successors, G.M. Houser, Ltd. and Houser Materials, L.L.C. which arose on July 13, 1999.

3. G.M. Houser, Inc., G.M. Houser, Ltd., and Houser Materials, L.L.C. were at all relevant times the debtor of David E. Rodgers as defined by Tex. Bus. & Com.Code § 24.002.

4. David E. Rodgers was at all relevant times a creditor of G.M. Houser, Inc., G.M. Houser, Ltd. and Houser Materials, L.L.C. as defined by TEX. BUS. & COM.CODE § 24.002.

5. G.M. Houser, Ltd. and Houser Materials, L.L.C. made transfers that were fraudulent as to its creditor David Rodgers.

6. G.M. Houser, Ltd. did not receive reasonably equivalent value in exchange for the assignment of the balance of proceeds of the $750,000 promissory note payable to it by Lattimore Materials Company, L.P., effective July 1, 2001, total proceeds being $725,000 occurring on, or about July 1, 2001.

7. G.M. Houser, Ltd. did not receive reasonably equivalent value in exchange for the transfer of proceeds from the $1,050,000 promissory note payable to it by Lattimore Materials Company, L.P., total proceeds being $1,050,000 occurring between April 10, 2001 and December 31, 2001.

8. G.M. Houser, Ltd. did not receive reasonably equivalent value in exchange for the transfer of real property located at 1611 Highway 276, Rockwall, Texas valued at $369,590 on, or about February 26, 2002.

9. G.M. Houser, Ltd. believed or should have reasonably believed as an uninsured, non-subscriber to the Worker's Compensation System that once employee David Rodgers had been injured as a result of a work related accident that it would incur debts beyond it[s] ability to pay as they became due.

### K. TEXAS BUSINESS & COMMERCE CODE § 24.006(a)

1. Under section 24.006(a) of the Texas Bus. & Com.Code, a transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or obligation was incurred f the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

2. David E. Rodgers had a valid and subsisting claim against G.M. Houser, Inc. and its successors, G.M. Houser, Ltd. and Houser Materials, L.L.C, which arose on July 13, 1999.

3. G.M. Houser, Inc., G.M. Houser, Ltd., and Houser Materials, L.L.C. were at all relevant times the debtor of David E. Rodgers as defined by TEX. BUS. & COM.CODE § 24.002.

4. David E. Rodgers was at all relevant times a creditor of G.M. Houser, Ltd. and Houser Materials, L.L.C. were at all relevant times the debtor of David E. Rodgers as defined by TEX. BUS. & COM.CODE § 24.002.

5. G.M. Houser, Ltd. and Houser Materials, L.L.C. made transfers that were

fraudulent as to its creditor David E. Rodgers.

6. G.M. Houser, Ltd. did not receive reasonably equivalent value in exchange for the assignment of the balance of proceeds of the $750,000 promissory note payable to it by Lattimore Materials Company, L.P., effective July 1, 2001, total proceeds being $725,000 occurring on, or about July 1, 2001.

7. G.M. Houser, Ltd. did not receive reasonably equivalent value in exchange for the transfer of proceeds from the $1,050,000 promissory note payable to it by Lattimore Materials Company, L.P., total proceeds being $1,050,000 occurring between April 10, 2001 and December 31, 2001.

8. G.M. Houser, Ltd. became insolvent as a result of the aforementioned fraudulent transfers made to Gerald M. Houser as defined by TEX. BUS. & COM. CODE § 24.003, and remained insolvent thereafter.

9. G.M. Houser, Ltd. did not receive reasonably equivalent value in exchange for the transfer of real property located at 1611 Highway 276, Rockwall, Texas valued at $369,590 on, or about February 26, 2002.

10. G.M. Houser, Ltd. was insolvent at the time of the aforementioned fraudulent transfer made to Gerald M. Houser as defined by TEX. BUS. & COM.CODE § 24.003, and remained insolvent thereafter.

## L. DETERMINATION OF NET WORTH

1. G.M. Houser, Ltd.[']s and Houser Materials, L.L.C.['s] aforementioned fraudulent transfers may be considered in the determination of G.M. Houser, Ltd.'s net worth for the purpose of setting security for supersedeas.

2. Based upon the financial data provided to the [I]nternal [R]evenue [S]ervice in the G.M. Houser, Ltd.'s 2001, 2002, 2003 & 2004 tax returns and evidence presented by counsel the net worth of G.M. Houser, Ltd. is $1,811,742.

3. The calculation for G.M. Houser, Ltd.'s net worth for the purpose of setting security for supersedeas is as follows:

### Assets

| | |
|---|---|
| **Current Assets** | |
| Cash | $ 152 |
| Transfer-$750,000 Promissory Note | $ 725,000 |
| Transfer-$1,050,000 Proceeds from 2nd Note | $ 1,050,000 |
| **Long Term Assets:** | |
| Transfer-Property at 1611 Hwy 276 | $ 369,590 |
| **Total Assets** | $ 2,144,742 |

### Liabilities and Partners Capital (Deficit)

| | |
|---|---|
| **Current Liabilities** | |
| Accounts Payable-trade | $ 90,000 |
| Loans from partner | $ 243,668 |
| Total Current Liabilities | $ 333,668 |
| Partner's Capital (Deficit) | $ 1,811,074 |
| Total Liabilities | $ 2,144,742 |

4. Plaintiffs affirmatively obtained severance of their claims against G.M. Houser.[9]

5. But for the severance, plaintiffs claims against Houser would have been determined at the trial which fixed defendants liability. Although the Trial Court offered to set the claim against Gerald M. Houser for trial, the plaintiffs and defendants have chosen to await the results of a direct appeal of the first trial.

9. [FN2 in findings]: Plaintiffs claims against Houser seek to establish his personal liability by fraudulent transfers described herein. Limitations has run and no new theories of recovery exist.

6. No evidence presented that Houser, if found liable, could not pay the judgment.

7. Houser knew that Plaintiff's employer did not subscribe to worker[']s compensation insurance.

8. Defendants obviously have substantial resources to pay for legal counsel to vigorously resist plaintiffs' claim.

9. Upon these imputed resources the court determines [10] [FN3] that for the purpose of setting supersedeas bond that each defendant has a minimum of $20,000.00 assets.

10. Plaintiffs set up the circumstance of a later determination if Houser is to be personally liable.

10. [FN3 in findings]: The Court is making no findings of fact, except as to fixing bond. A jury in due course will determine if Houser is liable upon the plead theories.