**DENY; and Opinion Filed June 26, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00852-CV

**PAYSON PETROLEUM, INC. AND MATTHEW CARL GRIFFIN, Appellants**
**V.**
**J. MICHAEL WHEELER AND JMW BROWN #1, LLC, Appellees**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-06306**

## MEMORANDUM OPINION ON MOTION TO REVIEW TRIAL COURT'S SUPERSEDEAS ORDER

Before Chief Justice Wright and Justices Lang-Miers and Stoddart
Opinion by Chief Justice Wright

Before the Court is the motion of Payson Petroleum, Inc. and Matthew Carl Griffin asking this Court to review the supersedeas bond. We affirm the trial court's order setting the supersedeas bond.

Following a jury trial, the trial court awarded judgment in favor of J. Michael Wheeler and JMW Brown #1 (collectively JMW) for $2,383,741 against both Payson and Griffin, jointly and severally, along with attorney's fees, exemplary damages, prejudgment interest, and statutory damages for Griffin's wiretap violation. To supersede the judgment, Payson and Griffin deposited $595,920.39 with the district clerk along with an affidavit stating that Payson's net worth was $1,089,853 and Griffin's net worth was $1,191,840.78.

JMW challenged the net worth claim and months of discovery ensued. Following a hearing, the trial court set the supersedeas bond at $2,643,829. This amount included the full amount of compensatory damages plus post-judgment interest for two years.

A judgment debtor may supersede a judgment by posting "a good and sufficient bond." *See* TEX. R. APP. P. 24.1(a)(2). When the judgment is for money, the amount of the bond must equal the sum of compensatory damages awarded, interest for the estimated duration of the appeal, and costs awarded in the judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(a) (West 2015); TEX. R. APP. P. 24.2(a)(1). The amount, however, cannot exceed the lesser of fifty percent of the judgment debtor's current net worth or $25,000,000. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(b); TEX. R. APP. P. 24.2(a)(1).

Rule 24.2(c) sets forth the procedure for determining net worth. A judgment debtor who provides security under 24.2(a)(1) in an amount based on its net worth, must file with the security an affidavit that states its net worth with complete, detailed information concerning the debtor's assets and liabilities. *See* TEX. R. APP. P. 24.2(c)(1). A judgment creditor then has the opportunity to file a contest to the debtor's affidavit and conduct reasonable discovery concerning the judgment debtor's net worth. *See* TEX. R. APP. P. 24.2(c)(2). The judgment debtor has the burden of proving net worth at the hearing on the contest. *See* TEX. R. APP. P. 24.2(2)(c)(3). Net worth is calculated as the difference between total assets and total liabilities as determined by generally accepted accounting principles. *See G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 840 (Tex. App.—Dallas 2006, no pet.).

On a showing by the judgment debtor that the judgment debtor is likely to suffer substantial economic harm if required to post security in the amount required for money judgments, the trial court shall lower the amount of security to an amount that will not cause the judgment debtor substantial economic harm. *See* TEX. CIV. PRAC. & REM. CODE ANN.

§ 52.006(c). Whether or not an appellant is likely to suffer substantial economic harm is a question of fact that we review for abuse of discretion. *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.,* 171 S.W.3d 905, 918 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Factors to consider in assessing whether posting a bond will result in substantial economic harm include: (1) the cost of obtaining the bond; (2) the availability of sufficient assets to cover that cost; (3) the availability of other sources from which the judgment debtor could secure funds to obtain the bond; (4) the judgment debtor's ability to borrow the funds; (5) the impact on the judgment debtor arising from the sale of assets sufficient to obtain the bond; and (6) the likelihood that selling assets to obtain the bond will result in the insolvency of the judgment debtor. *See id*. at 917.

On the motion of a party, we may review the sufficiency or excessiveness of security. *See* TEX. R. APP. P. 24.2(a). We review a trial court's ruling for an abuse of discretion. *See G.M. Houser,* 204 S.W.3d at 840. A trial court abuses its discretion if the evidence is legally or factually insufficient to support its findings. *Id*. The trial court, as fact finder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id*. Testimony from interested witnesses may establish a fact as a matter of law only if the testimony could readily be contradicted if untrue, is clear, direct, and positive, and there are no circumstances tending to discredit it. *See Lofton v. Tex. Brine Corp.*, 777 S.W.2d 384, 386 (Tex. 1989).

At the hearing, Payson and Griffin offered into evidence a December 31, 2013 Audited Financial Statement and a June 30, 2014 Reviewed Consolidated Financial Statement of Payson. The December statement showed a *negative* net worth of $2,750,840. The June statement showed a *positive* net worth of $1,138,383.

Jack Lamkin, a CPA, performed the 2013 audit and the June 2014 statement. On cross-examination, Lamkin stated that at the time he prepared the financial statements, he was unaware

that Payson and Griffin had been found liable for fraud in the amount of $2.3 million. He admitted the information would have been relevant in conducting the audit. He also admitted that it would have been helpful to know that Payson had spent investor's money to pay personal credit cards, fitness memberships, and trips to resorts because how management conducts itself is important. Lamkin also testified that Payson did not provide him with any information showing that Payson had a 17% interest in a four-well project offering.

Payson and Griffin also introduced a Balance Sheet dated September 30, 2014 prepared by Brett Pederson, in-house controller for Payson. This Balance Sheet shows a positive net worth of $509,851.96.

Dan Griffin (Dan) is the Chief Administrative Officer of Payson. Dan oversees the preparation of the financial statements. He testified that Payson drills well and sells interests in wells. Payson raises money from investors for drilling projects. The audit was performed to give assurances to the broker community and to investors. Payson has drilled and completed five wells and it is currently drilling a sixth well. Dan testified that Payson has raised about $42 million for all six wells. Dan also testified that as of January 12, 2015, Payson had between $1.5 and $1.9 million in its bank account. As of that same date, Payson Operating, a wholly-owned subsidiary of Payson, had $3.6 million in its bank account.

Matthew Griffin, the owner of Payson, testified at the hearing. He testified that he earned an annual salary of $120,000 and had no personal debt. He rents a house for $6,000 a month. He testified that he did not own any real estate or securities. His personal household items are worth $9,000. He owns five vehicles worth $91,114. He has two bank accounts for a total of $11,567.34. He has an ownership interest in several companies in addition to his 100% ownership of Payson. These additional ownership interests are:

1.      Prescott Capital Group - Matt Griffin (100%);

2.      Payson Oil & Gas Properties - Prescott Capital (99%) / Matt Griffin (1%);

3.      Maricopa Resources - Prescott Capital (99%) / Matt Griffin (1%);

4.      Payson Petroleum Grayson - Matt Griffin (1%) / Bill Griffin (99%); and

5.      Payson Petroleum Management Partners - Matt Griffin(51%) / Dan (25%) / Emily Epperson (24%).

Griffin testified that Maricopa is an investment company. It purchases leases and sells them for a profit. It purchased an interest in a Dallas Cowboys suite for $1.1 million. Maricopa profits about $10,000 when it leases the suite to Payson for $25,000. Payson is one of Maricopa's biggest clients. Griffin testified that he would suffer economic harm if he had to pay thousands more to supersede the judgment.

In a verified key man life insurance application signed on February 17, 2014, Griffin stated his net worth was $6 million, his annual salary was $72,000, and his gross annual unearned income was $12,600,000. As to Payson, its assets are listed on the application as $15,000,000 and its liabilities at zero. The application also shows gross sales of $54,800,000. Griffin signed the verified application individually and on behalf of Payson. The insurance company issued a $3 million policy.

At the hearing, Griffin testified the net worths listed in the insurance application were "forward looking" and do not accurately reflect the current net worths of himself or Payson. He testified that he was not currently worth $6 million as stated on the policy. Paul French, JMW's expert, testified that the sworn insurance application should be considered as evidence of Payson's and Griffin's net worths.

Based on the testimony, the trial court found, among other things, that:

- Defendants' financial statements are outdated and are not credible or reliable evidence of Payson's current net worth.

- Defendant Matthew Griffin's testimony and statements attempting to limit his net worth are inconsistent and lacking in credibility.

- Payson's Balance Sheet for September 30, 2014 is not credible or reliable evidence of Payson's current net worth.

- The Balance Sheet was not prepared in accordance with GAAP, as the letter accompanying the Balance Sheet explains and as Plaintiff's expert, Paul French testified.

- Evidence of Payson's current cash on hand, through testimony at the hearing, shows that Payson has far in excess of $704,639.16 in cash reflected on this Balance Sheet.

- The Balance Sheet does not contain other assets that Payson admittedly owns, including oil and gas interests/assets Payson owns such as "carries" in other wells.

- The Balance Sheet is not "consolidated" - thus it does not include the assets of its wholly-owned company, Payson Operating, LLC.

- Payson's June 30, 2014 Reviewed Consolidated Financial Statement is not credible or reliable evidence of Payson's current net worth for many reasons, including:

    a.  the Financial Statement is a review and not an audit. The preparer relied on the company to provide all of the information and the preparer did not verify the numbers in the financial. Payson and its owner lack credibility as witnesses.

    b.  the Financial Statement omits valuable holdings and assets of Payson.

- Payson's December 31, 2013 Audited Financial Statement is not credible or reliable evidence of Payson's current net worth for the same reasons expressed above.

- The Court finds the expert testimony of Plaintiff's accounting and valuation expert, Paul French, III, credible.

- Defendants applied for a $3,000,000 key man life insurance policy and in doing so, Matthew Griffin, on behalf of himself and Payson signed a verified declaration and application stating that his personal net worth is 6 million dollars and Payson's net worth is 15 million dollars. The verified application was signed by Griffin individually, and on behalf of Payson. The Court finds this to be credible and reliable evidence of Griffin and Payson's net worth.

–6–

- Griffin did not present credible evidence of the net worth or value of his ownership interests in his other companies. Although he testified he owns interests in various companies which own interests in producing oil and gas wells, leasehold, and other property, he failed to include any of these assets in the calculation of net worth.

- Griffin has no personal debt, lives in an 8700 square foot home on a golf course which he rents for $6,000 a month that has a guest house and pool. He owns 5 cars and owns at least one company that has the licensing rights for a Dallas Cowboys football stadium suite that is worth 1.1 million dollars.

- Defendants have not met their burden of proving Griffin and Payson's net worth.

- Defendant Payson Petroleum, Inc.'s current net worth is $15,000,000, based on the verified life insurance application.

- Defendant Griffin's current net worth is $6,000,000 based on the verified life insurance application.

Payson and Griffin raise several arguments. First, they contend the trial court erred in relying on market value as opposed to book value in determining net worth. Second, they contend it was error for the trial court to rely on the key man life insurance application because there is no evidence to support that Payson's assets minus liabilities equaled $15 million or that Griffin's assets minus liabilities equaled $6 million. Third, they contend the trial court failed to consider the key inquiry as to whether it had the ability to post the bond. Finally, they contend the trial court erred in finding that Payson and Griffin each has to post a bond for the full amount.

Payson and Griffin argue the trial court erred in relying on market value and improperly disregarded the only evidence of the proper measure of net worth - assets minus liabilities as set forth in the financial statements submitted at the hearing. The trial court did not find any of these financial statements credible. They claim the trial court "shirked" the well-established definition of net worth using instead a definition that encompasses market value at which a company or its assets could be sold. Although testimony was presented regarding the value of

certain assets, the trial court's findings show that valuation of assets did not factor into its determination of the net worths.

Rather, the trial court found Payson's current net worth was $15,000,000 and Griffin's current net worth was $6,000,000, both based on the verified life insurance application. Payson and Griffin contend the trial court abused its discretion by basing its net worth determination on the key man life insurance application. They contend the application and Griffin's testimony showed that these were "forward-looking estimates called for by the insurance policy's projected 20-year term." There is nothing in the application to indicate that the insurance company was seeking "forward-looking estimates." On the application, Payson's assets are listed at $15,000,000 and its liabilities at zero. Using the net worth formula advocated in their motion before this Court (assets minus liabilities), Payson's net worth is $15,000,000. In the application, Griffin stated his net worth was $6,000,000. Despite Griffin's testimony that that amount was "forward-looking," the application did not ask for a projected net worth. Moreover, this is the only testimony to that effect and it comes from, Griffin, an interested witness whose testimony the trial court found not credible. The insurance application was signed by Griffin on his own behalf and on the behalf of Payson. JMW's expert, French, testified the verified application was reliable evidence of net worth. The trial court found French's testimony credible.

Payson and Griffin also argue that, in relying on the insurance application, the trial court ignored the central inquiry in setting a bond - the judgment debtor's actual ability to post the security. As set out above, there are six factors to consider in determining whether posting a bond will cause a judgment debtor substantial economic harm. The only evidence regarding these factors in this case was Griffin's conclusory statement that it would cause "economic harm" if he had to pay thousands of dollars more to supersede the judgment. Payson and Griffin

–8–

did not present any evidence as to the cost of obtaining a bond, the availability of other sources from which it could secure funds to obtain the bond, its ability to borrow funds, or the impact on them arising from the sale of assets sufficient to obtain the bond. *See Ramco Oil*, 171 S.W.3d at 917. We conclude Payson and Griffin failed in their burden to show posting the bond in the amount of $2,643,829 will result in substantial economic harm.

The trial court heard conflicting testimony as to net worth. As the fact finder, the trial court was the sole judge of the witnesses' credibility and was free to accept or reject the proffered testimony. *See G.M. Houser*, 204 S.W.3d at 840. This is exactly what the trial court did with respect to the testimony regarding net worth. These are findings this Court cannot disturb. *Id.*

Finally, Payson and Griffin argue that the trial court abused its discretion to the extent the trial court is attempting to preclude them from posting joint security. They rely on the trial court's finding that each defendant must post a separate bond. However, the trial court's order setting supersedeas security correctly requires "Judgment Debtors Matthew Carl Griffin and Payson Petroleum, Inc." to post security in the amount of $2,643,829. The order does not require that Griffin and Payson each post security in the full amount of the bond.

The evidence supports the trial court's findings on the net worths of Payson and Griffin, and the bond set by the trial court did not exceed the limits set forth in the rules. *See* TEX. R. APP. P. 24.2(a); TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(b). Accordingly, we conclude the trial court did not abuse its discretion in setting the bond. We affirm the trial court's order.

/Carolyn Wright/
CAROLYN WRIGHT
CHIEF JUSTICE

140852F.P05

–9–