**Order reversed in part; and Opinion Filed January 23, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00675-CV

## ROSCOE F. "TREY" WHITE, III AND WHITE VENTURES ENERGY LLC, Appellants

### V.

## MICHAEL POTTORFF AND MONICA FABBIO, DERIVATIVELY ON BEHALF OF INVESTORS GROUP, LLC F/K/A WE INVESTORS GROUP, LLC, Appellees

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-11-00751-D**

# MEMORANDUM OPINION ON MOTION TO CORRECT TRIAL COURT'S SUPERSEDEAS RULING

Before Chief Justice Wright and Justices Lang-Miers and Stoddart
Opinion by Justice Stoddart

The challenged judgment in this appeal exceeds $30 million and grants declaratory relief.

Appellant, Roscoe F. "Trey" White, III, seeking to suspend enforcement of the judgment

pending appeal, filed in the trial court a $100 supersedeas bond and an affidavit of net worth

claiming his liabilities exceeded his assets by more than $1 million. *See* TEX. R. APP. P. 24.1(a);

24.2(a)(1),(c). Appellees contested the affidavit, and a two-day evidentiary hearing was held.

Finding portions of testimony and evidence offered on White's behalf not credible, the trial court

determined White's net worth to be $7,566,651. In reaching this conclusion, the trial court found

no credible evidence existed to support White's valuation of his residence and of one of his

companies, EvolvHealth, a manufacturer of weight management and energy supplements. The trial court also found that a gift White made to his family of thirty percent of his ninety-nine percent interest in another company, Tri-Properties, Ltd., constituted a fraudulent transfer. The trial court ordered White to post a bond equal to the lesser of (1) one-half his net worth as determined by the court or (2) the sum of compensatory damages awarded in the judgment plus two years' post-judgment interest for the estimated duration of the appeal. Asserting the trial court abused its discretion, White and White Ventures Energy LLC have filed a motion to correct the ruling. They request we vacate the ruling, find as a matter of law that White has a negative net worth of $1,018,919, and find the $100 bond White posted to be sufficient to suspend enforcement of the judgment pending appeal. Concluding the trial court abused its discretion in finding White's gift of thirty percent of his interest in Tri-Properties constituted a fraudulent transfer, we reverse the trial court's supersedeas ruling, determine White's net worth to be $4,215,115, and decrease the amount of the surety bond to the lesser of (1) $2,107,558, representing one-half White's net worth or (2) the sum of the compensatory damages awarded in the judgment, two years' post-judgment interest for the duration of the appeal, and costs awarded in the judgment. *See id.* 24.2(a),(d) (together allowing, upon review, modification of amount of bond not to exceed limits imposed by rule 24.2(a)(1)); *see also id.* 24.2(a)(1).

## I. BACKGROUND

White is a businessman who co-founded and chairs EvolvHealth and Marlin Atlantis, a real estate development group with resort communities in Lake Tahoe and North Carolina and projects throughout Texas. He is also a majority interest owner of Tri-Properties, an investment company. Originally a ninety-nine percent owner of Tri-Properties, White "gifted" ten percent of his interest to his minor daughter and twenty percent to other family members shortly after being served with this lawsuit. The transfer was documented by an assignment agreement dated

March 22, 2011, but effective as of January 1, 2011. According to the agreement, the transfer was in consideration for his family's "assum[ing] and undertak[ing] to perform and discharge any and all of the obligations accruing from and after the date hereof that are attributable to the Assigned LP Interest."

Each year, White prepares financial statements for two lenders. Many of these statements were admitted into evidence at the hearing on the contest to White's affidavit, but two were central to the trial court's ruling—White's December 31, 2013 statement, which was prepared two months before judgment was rendered; and White's March 15, 2014 statement, which was prepared two weeks after rendition of judgment and which was attached to White's net worth affidavit. Together, these statements show that, in a period of two months, White's net worth decreased by more than $9 million. Specifically, the statements show as follows:

|  | December 31, 2013 | March 15, 2014 |
|---|---|---|
| **Assets** | | |
| Cash | $ 8,448 | $ 35,221 |
| Investments | | |
| Tri-Properties, Ltd. | $ 8,073,104 | $ 5,335,477 |
| Homestead BSG, L.P. | $ 30,000 | $ 30,000 |
| Principal Residence | $11,700,000 | $ 5,575,000 |
| Personal Effects | $ 250,000 | $ 250,000 |
| Total | $20,061,552 | $11,225,698 |
| **Liabilities** | | |
| Line of credit | $ 2,847,610 | $ 2,834,022 |
| Tri-Properties, Ltd. note payable | $ 8,282,702 | $ 9,410,595 |
| Total | $11,130,312 | $12,244,617 |
| Estimated Income Taxes | $ 757,362 | $ 0 |
| Net Worth | $ 8,173,878 | $(1,018,919) |

As reflected in the statements, the decrease in White's net worth was due primarily to reductions in the values of White's residence and Tri-Properties. Andrew Gillentine, a real estate

appraiser, explained at the hearing that the reduction in the value of White's residence was attributable to (1) White's conveyance of part of the property to Tri-Properties and (2) market conditions. Gillentine testified he appraised White's residence in 2010 and 2014. At the time of the 2010 appraisal, the residence included 9.339 acres of land known as the Fisher property and 2.455 acres of land known as the Dalgreen Road property. Using a sales-comparison approach and based on $900,000 per acre, Gillentine appraised the residence at $11,700,000.

White conveyed the Dalgreen Road property to Tri-Properties in 2011, but did not reflect that change in his financial statement until 2014, after judgment was rendered. Gillentine testified that he appraised White's residence—the Fisher property—in March 2014 at $5,575,000 and the Dalgreen Road property at $1,650,000. These values were based on $800,000 for the first acre of each property, $400,000 for the remaining or "excess" acres, $1 million in improvements on the Fisher property, and $100,000 in improvements on the Dalgreen Road property. Although he again used a sales-comparison approach, Gillentine testified that the sales used for the 2014 appraisal were of properties less than one acre because larger estates had not sold in some time.

White and his accountant testified that the reduction in value of Tri-Properties was attributable to (1) the maturity of a $3 million note payable to an outside company and (2) a reduction in the value of EvolvHealth, one of Tri-Properties' assets.[1] Although EvolvHealth had about 10,000 distributors and thirty-five executives and was planning on launching skin care products, White testified that it was in a "distressed state," and its value had decreased from $5 million as of December 31, 2013 to $0 in March 2014 following a failed sale.

---

[1] Neither White nor his accountant testified live at the hearing. Instead, portions of their deposition testimony were offered. Additionally, portions of White's trial testimony were offered.

Based on the testimony and evidence admitted at the hearing, the trial court made the following relevant findings:

•The 2014 appraisals of White's residence and the Dalgreen Road property "were not based on comparable sales of properties" and did "not comply with the sales-comparison approach to support the 'excess acreage' theory and reduction of the value of each additional acre at 50% of the value of the first acre." Using $800,000 per acre plus the $1,000,000 in improvements, the value of White's residence is $8,471,200 ($7,461,200 (9.339 acres X $800,000 per acre) + $1,000,000). Using $800,000 per acre plus the $100,000 in improvements, the value of the Dalgreen Road property is $2,064,000 (2.455 acres X $800,000) + $100,000).

•No credible evidence was offered justifying the $5 million decrease in value of EvolvHealth.

•No credible evidence was presented showing White's net worth was a negative $1,018,919 as alleged in the March 15, 2014 financial statement.

•White's transfer of thirty percent of his interest in Tri-Properties constituted a fraudulent transfer under section 24.005(a)(1) of the Texas Uniform Fraudulent Transfer Act (TUFTA) as evidenced by the presence of several "badges" of fraud–(1) gifting three weeks after being served with the lawsuit; (2) receiving no reasonably equivalent value in exchange for his thirty percent interest; (3) gifting to insiders—his family; and (4) retaining control over Tri-Properties by retaining sixty-nine percent ownership interest and retaining control over the interest he gave his minor daughter. As a result, the trial court considered White a 99% owner of Tri-Properties instead of a 69% owner for the purpose of determining his net worth.

•The December 2013 financial statement, "which was prepared before the Court's judgment and was sent to financial institutions–-with appropriate adjustments–while not perfect, is more reliable than the [March 15, 2014] financial statement."

•Taking into consideration the valuation of White's residence and the Dalgreen Road property, the fraudulent transfer finding, and the changes in notes payable substantiated by the evidence, White's net worth is $7,566,651 as reflected below:

•Assets

| | |
|---|---|
| Cash | $ 35,221 |
| Tri-Properties | $11,060,068 |
| Investment Property | $ 30,000 |
| Residence | $ 8,471,200 |
| Personal Effects | $ 250,000 |
| | |
| Total: | $19,811,268 |

•Liabilities

| | |
|---|---|
| Line of Credit | $ 2,834,022 |
| Tri-Properties Note | $ 9,410,595 |
| | |
| Total: | $12,244,617 |

## II. DISCUSSION

In arguing the trial court abused its discretion in determining his net worth to be $7,566,651, White and White Ventures assert, among other arguments, that the evidence does not support the court's valuation of the residence and of the Dalgreen Property and does not support the court's determination that the gift to White's family of thirty percent of White's interest in Tri-Properties was a fraudulent transfer. They maintain White's testimony and the testimony of his witnesses was uncontroverted and established as a matter of law a negative net worth.[2]

### 1. Applicable Law

Texas Rule of Appellate Procedure 24.1 allows a judgment debtor to supersede the judgment by posting "a good and sufficient bond." *See* TEX. R. APP. P. 24.1(a)(2). Under appellate rule 24.2(a)(1) and Texas Civil and Practice Remedies Code section 52.006, when the judgment is for money, the amount of the bond must equal the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(a) (West 2008); TEX. R. APP. P. 24.2(a)(1). The amount, however, must not exceed the lesser of fifty percent of the judgment

---

[2] White and White Ventures also assert the court erred by (1) refusing to admit into evidence White's net worth affidavit, (2) admitting testimony of income earned in 1999 and White's 2007-2012 financial statements; and (3) drawing conclusions about "equity" from the 2007 financial statement. No harm is shown, however, by these actions. With respect to the exclusion of White's net worth affidavit, the affidavit was based on his March 15, 2014 financial statement which was admitted into evidence, and the affidavit fails to add any new material information to the evidence admitted at the hearing. *See In re M.M.S.*, 256 S.W.3d 470, 478 (Tex. App.—Dallas 2008, no pet.). With respect to the admission of White's earlier income and financial statements, no harm is shown because the trial court's ruling is based on the December 2013 and March 2014 financial statements. *See id.*; *see also Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 230 (Tex. 1990) ("Harmfulness [of erroneously admitted evidence] is determined by looking at the entire record to see whether the judgment was controlled by the [evidence] that should have been excluded.").

debtor's current net worth or $25,000,000. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(b); TEX. R. APP. P. 24.2(a)(1).

A judgment debtor who posts a bond under appellate rule 24 must simultaneously file with the trial court clerk a net worth affidavit that provides detailed information concerning the debtor's assets and liabilities from which net worth can be ascertained. *See* TEX. R. APP. P. 24.2(c)(1). A judgment creditor may contest the net worth affidavit and conduct reasonable discovery concerning the judgment debtor's net worth. *See id.* 24.2(c)(2). The judgment debtor bears the burden of proving net worth at the hearing on the contest. *Id.* 24.2(c)(3). Net worth is the difference between total assets and total liabilities as determined by generally accepted accounting principles. *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 840 (Tex. App. 2006, no pet.). When, as here, the judgment creditor asserts an asset transfer was fraudulent, the judgment creditor bears the burden of proving the fraudulent transfer by a preponderance of the evidence. *Id.* at 842. Subject to an exception not relevant here, a fraudulent transfer is established under the TUFTA either by showing the debtor intended to defraud the creditor, as evidenced by "a concurrence of many [badges of fraud]," or made the transfer without receiving reasonably equivalent value. TEX. BUS. & COM. CODE ANN. § 24.005(a),(b) (West 2009); *Challenger Gaming Solutions, Inc. v. Earp*, 402 S.W.3d 290, 294 (Tex. App.--Dallas 2013, no pet.); *Houser*, 204 S.W.3d at 843. "Badges," or factors, a trial court may consider in determining whether a debtor intended to defraud a creditor include whether (1) the transfer was to an insider; (2) the debtor retained possession or control of the transferred property after the transfer; (3) the transfer was concealed; (4) the debtor was sued or threatened with suit before the transfer was made; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration the debtor received was reasonably equivalent to the value of the transferred asset; (9) the debtor was insolvent or

became insolvent shortly after the transfer was made; (10) the transfer occurred shortly before or after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. *See* TEX. BUS. & COM. CODE ANN. § 24.005(b)(1)-(11); *Houser,* 204 S.W.3d at 842-43 (quoting earlier version of TUFTA).

## 2. Standard of Review

On the motion of a party, an appellate court may review the sufficiency or excessiveness of security. *See* TEX. R. APP. P. 24.4(a). An appellate court reviews the trial court's ruling for abuse of discretion. *G.M. Houser*, 204 S.W.3d at 840. The trial court abuses its discretion if the evidence is legally or factually insufficient to support its findings. *Id.* In reviewing a challenge to the legal sufficiency of the evidence, the appellate court considers the evidence in the light most favorable to the challenged finding and indulges every reasonable inference that would support it. *Id.* at 841. In reviewing a challenge to the factual sufficiency of the evidence, the appellate court considers the entire record, examining the evidence both in favor of and against the challenged finding. *Id.* The fact finding will be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* Under both sufficiency reviews, the appellate court must bear in mind that the trial court, as fact finder, is the sole judge of the credibility of the witnesses and weight to give their testimony. *Id.*

## 3. Analysis

The trial court's finding of White's net worth accepted as true White's statement in his December 31, 2013 financial statement that his personal effects were worth $250,000 and his investment property was worth $30,000. The court also accepted as true White's March 15, 2014 financial statement to the extent it reported $35,221 in cash and $12,244,617 in liabilities. The court, however, rejected White's March 2014 valuation of his residence based on the lack of

comparable sales and determined the value to be $8,471,200 applying a per acre rate. The court also rejected White's valuation of his interest in Tri-Properties as reflected in the March 2014 statement—$5,335,477—and determined it was worth $11,060,068 based on a 99% ownership interest, evidence that EvolvHealth's worth as of December 31, 2013 was $5,000,000, and testimony showing that, based on a per acre rate, the Dalgreen Property was worth $2,064,000.

As the fact finder, the trial court was the sole judge of the witnesses' credibility and was free to accept in part and reject in part the proffered testimony. *See Houser*, 204 S.W.3d at 841. This is exactly what the trial court did with respect to the testimony regarding the valuation of White's residence, the Dalgreen Property, and EvolvHealth. These are findings this Court cannot disturb. *Id.* Accordingly, to the extent White complains of the evidence to support these findings, we overrule his complaint.

As to White's complaint of error in finding his gift/assignment to his family of thirty percent of his interest in Tri-Properties amounted to a fraudulent transfer, we conclude, under this Court's opinion in *Houser*, that the evidence is legally and factually insufficient to support the finding. In *Houser*, we concluded that although "appellees' presentation to the trial court raised questions [regarding net worth] and caused the trial court to be 'skeptical' of them," appellees' presentation was not sufficient to controvert appellants' evidence. *Houser*, 204 S.W.3d at 846. As the judgment creditor, appellees bore the burden to offer evidence suggesting the elements of fraudulent transfer, and they failed to do so. *Id.* at 842.

The trial court here identified in its findings four of the eleven badges listed above—(1) the gift occurred about three weeks after White was served with the lawsuit; (2) White received no reasonably equivalent value in exchange for his thirty percent interest; (3) the transfer was to insiders - his family; and (4) White retained control over Tri-Properties by retaining sixty-nine percent ownership interest and retaining control over the interest he gave his minor daughter.

White does not dispute the transfer was to insiders, but contends no evidence contradicted that the transfer of his thirty percent interest in Tri-Properties was in exchange for "reasonably equivalent value"—his family's "assum[ing] and undertak[ing] to perform and discharge any and all of the obligations accruing from and after the date hereof that are attributable to the Assigned LP Interest." He also contends the transfer's effective date of January 1, 2011 preceded the date he was served with the suit by over a month. Finally, he contends no evidence showed he maintained control of the transferred interest, other than to the extent he exercised control over his daughter's portion because of her minority. White is correct. While appellees may have cast doubt on the truthfulness of White's testimony and evidence, appellees offered no evidence disputing the transfer of interest in Tri-Properties was in exchange for reasonably equivalent value, the effective date of the transfer preceded the date he was served with the lawsuit, or that he maintained control of the transferred interest. Under *Houser*, they failed to meet their burden, and the evidence is insufficient to support the finding that the gift/assignment was a fraudulent transfer and White remained a ninety-nine percent owner of Tri-Properties.

Considering White a sixty-nine percent owner in Tri-Properties, the value of his interest is $7,708,532. That amount added to White's other $8,751,200 in assets totals $16,459,732. Subtracting White's $12,244,617 in liabilities from that amount, his net worth is $4,215,115.

## III. CONCLUSION

We grant White's motion to the extent the trial court's order finding White's net worth to be $7,566,651 is reversed and White is ordered to post a bond or provide a cash deposit or other security equal to the lesser of (1) half his net worth of $4,215,115 or (2) the sum of the compensatory damages awarded in the judgment, two years' post-judgment interest for the estimated duration of the appeal, and costs awarded in the judgment. *See* TEX. R. APP. P. 24.2(a)(1).


/ Craig Stoddart/
CRAIG STODDART
JUSTICE


140675F.P05