# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON RULE 24.4 MOTION TO REVIEW SUPERSEDEAS RULING

## NO. 03-21-00291-CV

**Randall Crowder, Appellant**

**v.**

**Philip Sanger, MD, Individually and Derivatively on behalf of TEXO Ventures, LLC, TEXO Fund I GP, LLC, and TEXO Ventures I, LP, Appellees**

### FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-16-005403, THE HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M  O P I N I O N

**PER CURIAM**

Appellant Randall Crowder filed a motion to review the trial court's order setting the amount of bond, deposit, or security needed to supersede the trial court's judgment at $4,148,856.08. *See* Tex. R. App. P. 24.4. Finding that the trial court did not err by concluding that Crowder failed to provide complete, detailed information about his assets and liabilities from which the trial court could ascertain his net worth, we will affirm the trial court's order.

## BACKGROUND

After a bench trial, the trial court signed a judgment ordering Crowder to pay Appellee Phillip Sanger $539,857.08 in actual damages and attorney's fees and to pay Appellees

TEXO Fund I GP, LLC, and TEXO Ventures I, LP (Sanger) $3,608,999 in actual damages and attorney's fees; the judgment included amounts for exemplary damages that are not relevant to the bond issue. *See id.* R. 24.2(a)(1). The trial court sanctioned Crowder for his acts and omissions including failures to respond to discovery requests. Crowder filed this appeal as well as a petition for writ of mandamus concerning an order fining him and requiring further discovery responses; this Court denied the petition concerning the penalties but conditionally granted it on the portion of the order requiring Crowder to provide access to his information storage devices. *See In re Crowder*, No. 03-21-00604-CV, 2022 WL 1479474 (Tex. App.—Austin, May 11, 2022, orig. proceeding) (mem. op.).

On November 2, 2021, Crowder filed a Notice of Cash Deposit in Lieu of Supersedeas Bond (Notice), claiming a net worth of -$119,839.91; the Notice was based on Crowder's affidavit signed on October 20, 2021.[1] Crowder deposited $125 cash with the trial court clerk. Sanger filed objections to the Notice, moved to strike the affidavit, contested the claimed net worth, and sought discovery on the issue. The trial court held a hearing on Sanger's objections on February 16, 2022.

In its Order on Plaintiffs' Objections to Judgment Debtor Randall Crowder's Net Worth Affidavit, Motion to Strike Net Worth Affidavit, Motion to Contest Claimed Net Worth, and Setting Bond Pursuant to Tex. R. App. P. 24.2 (Order), the trial court found Sanger's objections meritorious. It concluded that Crowder's affidavit failed to satisfy the rules requiring that he provide complete, detailed information concerning his assets and liabilities from which net worth can be ascertained and that he failed to present sufficient credible evidence at the

---

[1] Crowder asserts that he tried to filed the Notice of Cash Deposit in Lieu of Supersedeas Bond on October 22, 2021, but the trial court clerk's office was unfamiliar with a notice of negative net worth and declined to file it until November 2, 2021.

hearing regarding his assets and liabilities to meet his burden to prove his net worth. *See* Tex. R. App. P. 24.2(c)(1) (affidavit requirements), (c)(3) (burden of proof). The court struck the affidavit and, based on Crowder's failure to present credible evidence to allow determination of his net worth, set the required deposit at the full amount of compensatory damages and costs awarded in the judgment.

Crowder then filed a Rule 24.4 Motion to Review Supersedeas Ruling (Motion), Sanger filed a response, and Crowder filed a reply.

## APPLICABLE LAW

A judgment debtor is entitled to supersede and defer payment of the judgment while pursuing an appeal. *Miga v. Jensen*, 299 S.W.3d 98, 100 (Tex. 2009); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 52.006; Tex. R. App. P. 24. Generally, when the judgment is for money, the amount of bond or security must equal the sum of the amount of compensatory damages, costs awarded in the judgment, and interest for the estimated duration of the appeal. Tex. Civ. Prac. & Rem. Code § 52.006(a); Tex. R. App. P. 24.2(a)(1). However, the amount of the bond may not exceed the lesser of twenty-five million dollars or fifty percent of the judgment debtor's current net worth. Tex. Civ. Prac. & Rem. Code § 52.006(b); Tex. R. App. P. 24.2(a)(1). But when the trial court is unable to determine a specific net-worth amount from the evidence, it is not an abuse of discretion to set the bond in the default amount dictated by Rule 24.2(a)(1). *Texas Black Iron, Inc. v. North Am. Interpipe, Inc.*, No. 14-20-00068-CV, 2020 WL 10231117, at *8 (Tex. App.—Houston [14th Dist.] July 28, 2020, mem. op. on motion).

The judgment debtors have the burden of proof to establish net worth. *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 840 (Tex. App.—Dallas 2006, op. on motion). On any

3

party's motion, we review the sufficiency or excessiveness of the amount of security and the trial court's exercise of discretion in setting the amount of security. Tex. Civ. Prac. & Rem. Code § 52.006(d); Tex. R. App. P. 24.4. We review a trial court's order setting post-judgment security under an abuse-of-discretion standard. *G.M. Houser*, 204 S.W.3d at 840; *Ramco Oil & Gas Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 909-10 (Tex. App.—Houston [14th Dist.] 2005, no pet.). However, we review questions of law de novo because a trial court has no discretion in determining what the law is or applying the law to the facts and therefore abuses its discretion if it misinterprets or misapplies the law. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). A court abuses its discretion when it acts without reference to any guiding rules or principles. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). In assessing a bond, the trial court abuses its discretion if the evidence is legally or factually insufficient to support its findings. *G.M. Houser*, 204 S.W.3d at 840.

To show the trial court abused its discretion by basing its findings on legally insufficient evidence, judgment debtors must show the evidence conclusively establishes, as a matter of law, all vital facts in support of their position. *Id*. at 840-41.[2] In determining whether

---

[2] Legal-sufficiency review of a finding on which the appellant had the burden of proof typically begins with an examination of the evidence supporting the challenged finding followed by review of the entire record for conclusive support of appellant's proposed contrary finding. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). Here, however, the bond amount was set at half the judgment amount by default not because the trial court found that Crowder's net worth exceeded twice the judgment amount but because the trial court found that Crowder failed to carry his burden to prove his net worth. *See* Tex. R. App. P. 24; *Texas Black Iron, Inc. v. North Am. Interpipe, Inc.*, No. 14-20-00068-CV, 2020 WL 10231117, at *8 (Tex. App.—Houston [14th Dist.] July 28, 2020, mem. op. on motion). On this issue, examining whether any evidence supports the finding that Crowder failed to carry his burden to prove his net worth dovetails with examining whether Crowder proved his net worth. For efficiency, we will focus on the second *Dow* question to also answer the first.

the evidence is legally sufficient to support the trial court's determination of net worth, we consider all of the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 908 (Tex. App.—Houston [14th Dist.] 2005, order on motion). We must credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. We must determine whether the evidence before the court would allow reasonable and fair-minded people to find the facts at issue. *City of Keller*, 168 S.W.3d at 827; *Ramco*, 171 S.W.3d at 910.

In reviewing the factual sufficiency of the evidence to support the trial court's finding of net worth, we examine the entire record, considering the evidence both in favor of and contrary to the challenged finding. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Ramco*, 171 S.W.3d at 910. We set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *Ramco*, 171 S.W.3d at 910.

The trial court, as fact finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819; *Ramco*, 171 S.W.3d at 910. We may not substitute our judgment for the fact finder's even if we would reach a different answer on the evidence. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

5

**DISCUSSION**

Crowder contends that the trial court erred by striking his affidavit and setting the bond at the full amount of the judgment's compensatory damage and costs award. He contends that (1) the uncontested evidence established his negative net worth when he signed the affidavit, (2) the trial court abused its discretion by concluding that the de minimis errors in his spreadsheet used to calculate his net worth warranted the striking of his entire affidavit and the imposition of the security required, and (3) the trial court abused its discretion if it accepted Sanger's invitation to base any conclusions about the accuracy of Crowder's net-worth statement on the previous discovery-related sanction and contempt orders because his net-worth documents should be evaluated on their own merits.

## I.  Crowder did not show that the trial court used contempt-related findings in evaluating net-worth documents or that it erred if it did so.

The trial court stated in the Order that Crowder did not provide "sufficient credible evidence" regarding his assets and that he "failed to present credible evidence for this Court to determine his net worth." It did not state that its decision was based on anything other than an assessment of Crowder's net-worth affidavit and the evidence presented in the hearing. Neither Crowder's argument nor the record shows that the trial court relied on its prior findings of discovery abuse in evaluating the evidence supporting Crowder's affidavit of net worth. For that reason alone, the third ground urged by Crowder does not support overturning the Order.

Even if the trial court's Order was influenced by Crowder's prior discovery conduct, Crowder did not show error. The trial court is the sole judge of the parties' credibility. *City of Keller*, 168 S.W.3d at 819; *Ramco*, 171 S.W.3d at 910. In *Ruff v. Ruff*, the Dallas Court of Appeals affirmed a trial court's order finding that a debtor's uncontroverted testimony about

6

his net worth was not credible when that finding might have been affected by the debtor's prior defiance of court orders, production of very few documents, and other obstructive conduct including failure to respond to interrogatories. No. 05-18-00326-CV, 2018 WL 2926639, at *4 (Tex. App.—Dallas June 8, 2018, op. on motion). The Dallas Court of Appeals concluded that the record supported the trial court's finding that the appellant did not present credible evidence from which the trial could determine his net worth and that the trial court did not abuse its discretion in setting the bond at the full judgment amount. *Id.* Crowder presents no authority for the proposition that the trial court must ignore his prior conduct in the same lawsuit when assessing his credibility concerning the evidence of his net worth. Like the trial court in *Ruff*, the trial court in this case found in other orders that Crowder did not fully respond to discovery requests, that his explanations for non-production were not credible, and that he knowingly and intentionally violated the trial court's written order compelling full compliance with discovery requests. *See In re Crowder*, 2022 WL 1479474, at *1-*2 (discussing Crowder's prior conduct). Even if the trial court considered Crowder's prior conduct when assessing Crowder's net-worth affidavit, it did not err. Crowder's ground three lacks merit.

II.     **Crowder did not show that the trial court abused its discretion by striking his net-worth affidavit or finding that he did not provide sufficient information to ascertain his net worth.**

Crowder's contentions in grounds one and two that the trial court abused its discretion by sustaining objections to and striking his net-worth affidavit also fail, as does his assertion that he provided uncontroverted evidence supporting his affidavit claiming negative net worth. While finding that the affidavit did not provide complete, detailed information concerning Crowder's assets and liabilities, the trial court did not specify which particular

7

aspects of the affidavit were lacking. The court generally sustained Sanger's objections, which included a complaint that the affidavit was filed based on an outdated net-worth statement that included items not substantiated by documents or a description of how Crowder found the amounts, valuations, or estimates.

Sanger objected that the affidavit signed on October 20, 2021, and filed on November 2, 2021, relied on values from account statements prepared throughout the month of September 2021. Crowder testified at the hearing that he prepared the net-worth statement to meet an unspecified court deadline of September 28, 2021, and so used the most recent statement balance on various accounts available on that date; this included a September 21, 2021 statement for his Phunware stock. He did not then update any values before his October 20, 2021 affidavit. Though Sanger also contended that Crowder should have updated the values and evidence for the February 2022 hearing, we will focus on the subject of the trial court's order: Crowder's affidavit and its deficiencies in content and supporting credible evidence.

Sanger complained that Crowder did not explain how he calculated the value of his Phunware stock or how he estimated the amount he owed on his 2019 income taxes. Sanger also complained that Crowder did not explain how he calculated the value of his homestead other than to assert that the value was based on a June 2021 appraisal, did not set out his mortgage amount, and did not discuss how payments on the mortgage affected the asset's value by October 2021. After prehearing discovery, Sanger also challenged Crowder's claim of a $300,000 liability to his ex-wife. Although Crowder's affidavit was prima facie evidence of his net worth, Sanger's objections and related evidence rebutted it in sufficient part.

8

A.    Crowder's contingent liability and the undisclosed related contingent asset

Sanger objected to Crowder's inclusion of a $300,000 long-term liability to his ex-wife. Crowder testified at the hearing, correcting the liability value to $400,000 arising from his divorce decree's requirement that he pay his ex-wife fifty cents of every dollar of the proceeds of a future sale of Texo stock up to a cap of $400,000. Crowder argues that his understatement of the contingent liability overstated his net worth by $100,000.

However, the liability to his ex-wife is contingent on the sale of the stock that Crowder testified at the hearing had not happened. There is no guarantee that Crowder will ever sell the shares or, if he does, what amount he will receive for them. Further, Crowder's testimony indicates that his contingent liability when realized would be matched by an asset of the fifty cents per dollar of sales proceeds that Crowder is *not* required to pay his ex-wife; Crowder did not list this contingent asset. Still further, if the sales proceeds exceed $800,000 total, all of the additional sales proceeds will belong to Crowder alone; Crowder did not list this contingent asset or support its value. Sanger asserted at the February 2022 hearing that the stocks subject to this provision of Crowder's divorce decree were valued at around $2 million.

Crowder misstated the value of his contingent liability in his net-worth statement, omitted the value of a contingent asset that at least balances the contingent liability, and failed to claim or prove the value of the contingent asset. These facts support the trial court's conclusion that Crowder's affidavit failed to provide complete, detailed information concerning the debtor's assets and liabilities and that Crowder failed to present credible evidence from which the court could determine his net worth.

9

B. Uncertainty about the value of Phunware shares.

Crowder's net-worth statement listed Phunware stock with a current market value of $86,300.52 in an individual account and $225,293.55 in a plan account for a total of $311,594.07 on September 29, 2021.

Sanger objected that Crowder did not show how those values were calculated. In his brief supporting his objections, Sanger asserted that the value of the Phunware shares fluctuated, listing the following values in a five-week period in the fall of 2021:

| date | event | price per share |
|------|-------|-----------------|
| September 29 | net-worth statement prepared | $0.94 |
| October 20 | affidavit signed | $1.05 |
| October 22 | Crowder attempts to file affidavit | $8.74 |
| November 2 | clerk accepts affidavit | $4.57 |

Sanger also noted that the price had not dropped below $2.09 per share since the affidavit was filed, and that the shares traded at $2.91 per share on November 30, 2021, and closed at $3.58 per share on February 16, 2022, the day before the hearing. Sanger contrasted the $311,594.07 total value reported by Crowder in the September 29 net-worth statement with the $2,099,148.52 value based on the share price on November 2 when the affidavit was filed—a $1,787,554.45 difference.

Crowder argued that the fluctuations in value are irrelevant because the courts should focus on the affidavit when it is signed. He asserted that average value over the course of a year was $1.98 per share and testified that the share value was "extremely volatile."

The stated value of the Phunware shares is problematic for Crowder not because stock value fluctuates but because the value he used from three weeks before the date he signed his affidavit did not show his "current net worth" when he filed his affidavit and made the cash

deposit in lieu of bond—the value he must prove in order to post a bond for less than the full judgment amount. *See* Tex. R. App. P. 24.2(a)(1)(A). Cases that Crowder cites state that the relevant value is the judgment debtor's "assets minus current liabilities *at the time the bond is set*"[3] and assess an affidavit based on a balance sheet prepared the same date as the affidavit.[4] Though Crowder testified that he used values from the most recent account statements from September to support his net-worth statements, he showed in preparing his response to Sanger's objection to his affidavit that he could obtain values on specific dates apart from end-of-cycle statements. While we do not hold that the underlying asset values must always be derived on the exact date of the affidavit to allow the trial court to assess a debtor's net worth, the trial court could reasonably determine that a three-week-old value of what Crowder understandably described as an extremely volatile asset did not provide complete, detailed information from which net worth could be ascertained as of the date of the affidavit or the date the affidavit and cash deposit were filed. *See id.* R. (a)(1)(A), (c).[5]

Crowder asserts that the valuation of the Phunware shares is somehow immaterial because he is prohibited by an agreed order from selling them. He argues that he cannot use them to post a bond, but that Sanger's ability to collect on a judgment is protected, effectuating the purpose of an appeal bond. The restraint on sales does not render the value of this asset immaterial under the rules. Texas Rule of Appellate Procedure 24 authorizes an injunction to

---

[3] *EnviroPower, LLC v. Bear, Stearns & Co.*, 265 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

[4] *Texas Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 307-08, 314 (Tex. App.—El Paso 2009, op. on order [mandamus denied]).

[5] Because Crowder does not argue that he carried his burden to prove his net worth on any other date, we need not examine the proof on any other dates.

prohibit debtors from dissipating or transferring assets to avoid satisfaction of the judgment but does not exclude such assets from the calculation of the debtor's net worth. Further, the agreed order could be withdrawn or amended by the trial court if necessary. The order restricting his ability to sell the stocks does not affect our analysis.

C.     Uncertainty regarding 2019 income-tax liability

On the September 2021 net-worth statement supporting the October 2021 affidavit, Crowder listed his 2019 taxes as an "estimated" $40,392 liability. Sanger objected that Crowder failed to explain how he estimated that amount. At the hearing on objections, Sanger discussed a 2019 income-tax return obtained from Crowder's mortgage lender that showed Crowder claiming a $2,940 refund.[6] Crowder's attorney responded that Crowder instead had a $64,000 tax liability in 2019 and said he would introduce a return showing that in his examination of Crowder; we find no such testimony or exhibit in the record before us. Crowder argues in his reply brief on this motion that

> Sanger is in possession of both Crowder's Original and Amended 2019 Tax Return and knows for a fact—yet misrepresents—that Crowder was entitled to a refund when he owed additional taxes, even beyond the amount he inadvertently listed, which Crowder's counsel stated at the contest hearing. Although the wrong tax return was appended to the affidavit, Sanger is aware of the actual amount Crowder owed on his taxes. Sanger has no support for any of these arguments.

Crowder does not cite to testimony or evidence supporting his claim that he owed or paid $64,000 in income taxes in 2019 or that Sanger is in possession of an amended 2019 return and

---

[6] Sanger attached pages appearing to be from Crowder's 2019 income tax return, marked as Plaintiff's Exhibit 8, showing Crowder claiming a $2,940 refund.

is misrepresenting the amounts due. This Court cannot assess whether the trial court wrongly ignored evidence when it is unclear whether the evidence was in the record.

### D. Other disputed assets

Crowder admitted that the $5,650 value he listed for firearms and jewelry was mistakenly not added to the homestead equity to create the household-assets subtotal in the net-worth statement; instead, the household assets subtotal was the same as the amount of homestead equity he claimed separately from the firearms-and-jewelry line item. This math error did not prevent the trial court or this Court from ascertaining Crowder's net worth. If this were the only issue with the affidavit, the trial court or we could recalculate his net worth.

Crowder testified that he had recently obtained an additional $21,000 in cryptocurrency through a $1,000 company gift and $20,000 from his salary, adding to the $69.34 he declared as an asset as of September 28, 2021, but Crowder intimated that the transaction occurred after the net-worth statement and affidavit were filed and closer to the February hearing. The failure to include the later purchase did not undermine the accuracy of the net-worth statement regarding Crowder's assets when he filed the affidavit.

Sanger also complained that Crowder did not explain how he calculated the $104,000 he claimed as homestead equity other than to assert that the value was based on a June 2021 appraisal of $924,000 less his $820,000 purchase price. Sanger complains that Crowder did not discuss how mortgage payments by October 2021 might have altered his equity interest. Sanger did not produce any evidence disputing the claimed appraised value or the purchase price. Even if we assume that the appraised value of the property remained static over a four-month period, Crowder did not make clear whether the entire $820,000 "purchase price" is entirely a mortgage liability and whether that liability changed in the months after the sale due

13

to interest or payments. Crowder provided incomplete information for courts to ascertain the value of this portion of his net worth at the time he signed or filed his affidavit.

E.     No error in striking the affidavit

By ground two, Crowder contends that the trial court abused its discretion by concluding that de minimis errors in his spreadsheet used to calculate his net worth warranted the striking of his entire affidavit and the imposition of the security required. But the trial court did not abuse its discretion by viewing the errors and omissions discussed above as more than de minimis. Crowder understated the amount of his contingent divorce liability by $100,000 but omitted the contingent asset of equal or greater value accruing concomitantly with the stock sale triggering the contingent payment; Sanger asserted at the hearing without contradiction that the shares whose sale would trigger Crowder's obligation to pay his ex-wife were worth about $2 million—approximately $1.6 would remain his. Most critically, Crowder did not claim or provide evidence of this asset from which the trial court could ascertain his net worth. Further, Crowder used a three-week-old value for his Phunware shares, and evidence showed that the outdated value of this "extremely volatile" asset did not establish its value when Crowder later filed his affidavit to set his security amount; though Crowder claimed that the difference between the values on September 29 and October 20 was small, the discrepancy exists and reasonably cast more doubt on the credibility of Crowder's assertions of value. Crowder's estimate of his 2019 tax liability was inconsistent with both the tax form in this record showing he claimed a refund and with the amended tax form he claimed would show that he owed more taxes than he had estimated on the net-worth statement.

The trial court did not abuse its discretion by striking the affidavit if it concluded that these discrepancies and uncertainties regarding the accuracy of the items on the net-worth

14

statement are not de minimis errors and undermine his affidavit of net worth. Although the failure to add the firearms and jewelry value was fixable and no error was shown in the crypto value as of the time of the affidavit, the discrepancies and uncertainties concerning the divorce liability, the Phunware value, the tax liability, and the home asset's net value support the trial court's decision. On this record, the trial court did not abuse its discretion by concluding that Crowder did not provide complete information regarding his assets and liabilities that would allow the trial court to ascertain his net worth.

F.       Sufficient evidence supports court's decision not to lower the bond amount.

By ground one, Crowder contended that the uncontested evidence established his negative net worth when he signed the affidavit. He urges that courts must focus on his net worth at the time he filed his affidavit. He contends that, regardless of errors or omissions in his net-worth statement supporting his affidavit, no evidence in the record supports a finding that he has a net worth of $8,297,712.16—the net worth that would set the bond amount at the full value of the relevant portion of the judgment. *See* Tex. R. App. P. 24.2(a)(1)(A). Crowder suggests that, if courts find discrepancies in the net-worth statement, we can recalculate the debtor's net worth rather than set the bond at the value of the relevant portions of the judgment as the court of appeals did in *LMC Complete Automotive, Inc. v. Burke*, 229 S.W.3d 469, 485-486 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

However, the record in *LMC* provided sufficient information from which the court could recalculate net worth. *Id.* at 486. Here, the trial court concluded that Crowder failed to provide complete information from which the trial court could ascertain his net worth at the time the affidavit was signed or filed or at the time the hearing was held. Although the evidence in the record does not establish that Crowder has a net worth of $8.2 million, that misplaces the

15

burden. The default amount of security required is the full amount of the compensatory damages, interest to accrue during the appeal, and costs awarded in the judgment, and Crowder must establish that he has a net worth low enough to justify reducing the bond amount. *See* Tex. R. App. P. 24.2(c). The trial court concluded that he did not carry his burden to provide an affidavit containing complete, detailed information concerning his assets and liabilities from which his net worth could be ascertained. *Id.* The record supports the trial court's conclusion that Crowder did not carry his burden.

We agree with courts who concluded that "when the trial court is unable to determine a specific net-worth amount from the evidence, it is not an abuse of discretion to set the bond in the default amount dictated by Rule 24.2(a)(1)." *Texas Black Iron, Inc.*, 2020 WL 10231117, at *8; *see also Ruff,* 2018 WL 2926639, at *4; *Newsome v. North Texas Neuroscience Ctr., P.A.*, No. 08-09-00025-CV, 2009 WL 3738504, at *5 (Tex. App.—El Paso Nov. 9, 2009, op. on motion).

## CONCLUSION

We overrule Crowder's grounds of error regarding the setting of the appeal bond. We affirm the trial court's order setting the amount of the appeal bond in the default amount dictated by Rule 24.2(a)(1).

Ordered June 24, 2022.


Before Chief Justice Byrne, Justices Kelly and Smith