# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00282-CV

**New Braunfels Stewardship Properties, LLC and Harold T. Ray, III, Appellants**

**v.**

**Circle F Investments, LP and Original DFI, LLC, Appellees**

---

**FROM THE 207TH DISTRICT COURT OF COMAL COUNTY,
NO. C2021-0208D, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING**

---

## O R D E R   A N D   M E M O R A N D U M   O P I N I O N

**PER CURIAM**

Appellants New Braunfels Stewardship Properties, LLC (NBSP) and Harold T. Ray III appealed the trial court's final judgment on May 1, 2024. Appellants have filed a motion challenging the trial court's order setting supersedeas bond that was signed July 10, 2024. The Court granted a temporary stay of that order, *see* Tex. R. App. P. 24.4(c), on July 29, 2024, pending full review. After review of the parties' briefing on the motion, we lift our temporary stay and affirm the trial court's order setting supersedeas bond. *See id.* at R. 24.2.

## APPLICABLE LAW

A judgment debtor is entitled to supersede and defer payment of the judgment while pursuing an appeal. *Miga v. Jensen*, 299 S.W.3d 98, 100 (Tex. 2009); *Crowder v. Sanger*, No. 03-21-00291-CV, 2022 WL 2291213, at *2 (Tex. App.—Austin June 24, 2022, op. on

1

motion) (per curiam) (mem. op.); *see also* Tex. Civ. Prac. & Rem. Code § 52.006; Tex. R. App. P. 24. The amount of security required to supersede a judgment pending appeal depends on the type of judgment at issue. Tex. R. App. P. 24.2 (a)(1)-(3). Generally, when the judgment is for the recovery of money, as is applicable here, the amount of the security must equal the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment. Tex. Civ. Prac. & Rem. Code § 52.006(a); Tex. R. App. P. 24.2(a)(1). However, the bond amount may not exceed the lesser of twenty-five million dollars or fifty percent of the judgment debtor's current net worth. Tex. Civ. Prac. & Rem. Code § 52.006(b); Tex. R. App. P. 24.2(a)(1).

The judgment debtors, here appellants, have the burden of proving their net worth. *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 840 (Tex. App.—Dallas 2006, op. on motion). This requires the judgment debtor to file an affidavit in the trial court that states its net worth and complete information detailing its assets and liabilities. *See* Tex. R. App. P. 24.2(c)(1). "Net worth is calculated as the difference between total assets and total liabilities as determined by generally accepted accounting principles [(GAAP)]." *G.M. Houser, Inc.*, 204 S.W.3d at 840. "In setting the amount of supersedeas security pending appeal, the trial court is required to consider the separate financial condition of each judgment debtor." *Id.* (citing Tex. R. App. P. 24.2(c)(3)).

**BACKGROUND**

Appellant NBSP is a single-purpose entity whose ownership of a commercial mixed-use property in New Braunfels ("the property") makes up an overwhelming majority of its assets. It leases commercial real estate space to commercial tenants. Appellant Ray is a

co-owner of a business entity that owns a majority interest in NBSP. Appellees sued appellants for acts of fraud and tortious interference involving a commercial lease, and the case was tried to a jury. The jury found in favor of appellees, including finding that appellants had committed fraud. On February 6, 2024, the trial court signed a final judgment in favor of appellees in the amount of $7,000,002 to be paid by NBSP, with appellant Ray jointly and severally liable for $1,000,001 of the total amount.

On April 2, 2024, the trial court signed an injunction against appellants. This order included a finding that the injunction order was being made based on discovery that appellants, through their accountant Jim Hickman, had "executed a deed of trust granting R&H Properties, LLC, Harold T. Ray, Jr., and the E.J. Hickman Family Trust a security interest in the NBSP property for $1,147,159.31 in purported loans to NBSP" on the business day prior to the first day of trial. Hickman is the trustee for the E.J. Hickman Family Trust, which is a co-owner with Ray of R&H Properties. R&H owns 55% of NBSP. Based on that execution of the deed of trust "on the eve of trial, the court conclude[d] that the judgment debtors are likely to dissipate or transfer their assets to avoid satisfaction of the judgment," and it ordered that appellants are enjoined from "further dissipating, transferring, or otherwise encumbering assets in their possession which may otherwise be available to satisfy the judgment entered in this cause except as may be necessary in the normal course of their business" and from "foreclosing on, or taking any affirmative steps to foreclose on, or exercising any purported security interest the lenders claim to have to the NBSP property based on the alleged debt evidenced by the deed of trust."

On April 5, appellants filed motions to set supersedeas bonds based on their net worth and filed accompanying net worth affidavits. NBSP claimed that its total assets, including the property, are worth $4,432,048.64 and that its liabilities are $4,342,161.43, including the

3

$1,143,714.81 in loans that were the subject of the April 2nd injunction. Based on those figures, NBSP calculated its net worth at $89,910.56, and filed a $44,955.28 supersedeas bond. NBSP's affidavit included the following financial documents: a February 2024 balance sheet, a February 2024 profit-and-loss statement, and appraisals for the property from the Comal County Appraisal District. Ray claimed $3,209,903 in assets and $3,910,941 in liabilities, which results in a negative net-worth calculation. NBSP's affidavit was prepared by Hickman, who also assisted Ray in preparing his affidavit.

On April 9, appellees filed objections in the trial court to appellants' net-worth affidavits. Appellants appealed the final judgment to this Court on May 1, 2024.

On July 9, 2024, the trial court held an evidentiary hearing on the supersedeas bonds, specifically on appellees' objections to the adequacy of appellants' net-worth showing to support their posted bond amounts. Prior to the hearing, appellees deposed NBSP's accountant Hickman about the net-worth affidavits and his calculations. Appellees' evidence presented at the hearing included appellants' April 2024 net worth affidavits, appellants' amended net-worth affidavits signed July 2, 2024, an appraisal report on the property, a 2018 financial statement for Ray, and a bank memorandum with a financial statement for Ray. Appellees called Hickman and Ray as witnesses. Appellants' evidence included the following documents: NBSP's 2023 balance sheet; NBSP's February 2024 balance sheet and profit-and-loss statement; two guaranty agreements signed by Ray as guarantor; an opinion letter and resume from Caroline Craig, a certified public accountant that reviewed NBSP and Ray's net-worth affidavits; and NBSP's income-tax forms from 2016 to 2023. Appellants called Craig as a witness.

At the bond hearing, Hickman testified that he is a certified public accountant who prepared NBSP's net-worth affidavits. The April 2024 affidavit is the one that the posted

4

bond was based on, but Hickman also filed an amended one after being deposed by appellees regarding the first affidavit. The amended affidavit calculated a negative net worth for NBSP. Hickman confirmed that he had appeared as the corporate representative for NBSP at a deposition.

Hickman testified that he calculated NBSP's net worth by disregarding the appraisals and using the "cost basis." He testified that the property's cost basis is the amount NBSP paid for the property. He testified that the total asset cost basis is the total fixed assets with accumulated depreciation subtracted. However, Hickman testified that at the time he prepared his affidavit and when he was deposed, he did not know how much NBSP paid for the property. He also testified that he did not know the details of the purchase but based his calculations solely on NBSP's books, which he testified was "normally what you do in accounting." He admitted that when he first took over the books, he had found errors. He also admitted that the property included three buildings, but the accounting statement had separate entries for buildings one and two but had no entry for building three. He explained that he thought it was likely that the third building's value was included with the value of the second.

Hickman was asked about inconsistencies between his deposition testimony and his hearing testimony regarding whether the loans totaling $1,147,159.31 made to R&H Properties, LLC; Harold T. Ray, Jr.; and the E.J. Hickman Family Trust were contingent liabilities. At his deposition he had testified that he did consider them contingent and that contingent liabilities should not be included, and at the hearing he testified they were not contingent. Hickman explained that his blood sugar was low during the deposition, and he was confused when asked about the loans and thought he was being asked about tenant balances. He testified that under GAAP, contingent liabilities should not be included in net-worth calculations.

5

Hickman testified that although he was still using February as the time frame for calculating net worth in his amended affidavit, he decreased the total asset value and increased liabilities by approximately $12,000, which made NBSP's net worth negative. He explained that when preparing NBSP's tax return he discovered that the calculations from his April net-worth affidavit were not correct. He agreed that the new affidavit did not correct the error in the missing line for building three. However, he testified that he had "no doubt" that all three buildings were included as assets in the report.

He also testified that cost-basis calculations are used in accounting and that using market value would be "chaos." He explained that to "measure the ability to pay, cost basis" should be used.

Ray testified next. He confirmed that he owns 50% of R&H Properties along with the Hickman Family Trust, and that the R&H Properties owns 55% of NBSP. He testified that Hickman assisted him with preparing his April net-worth affidavit, but not his 2023 personal financial statements. He explained that he prepares one annually for the bank for lending purposes for his businesses. He admitted that in his financial statement, he used the market value for the property in calculating his assets rather than cost basis. He also admitted that during depositions in preparation for the hearing, neither Hickman nor he could remember the purchase price of the property, which is used to calculate cost basis. He admitted that he did not provide any other years' financial statements to appellees because he does not keep them and agreed that appellees had obtained his 2018 statement directly from his bank. He also admitted that he claims only his ownership percentage of the property value but claims the entire debt as a liability. He explained that is because he personally guaranteed the debt. He agreed that guarantor liabilities are contingent liabilities. Ray admitted that he filed an amended affidavit

6

based on errors that were discussed during his deposition but that he did not remove the contingent liabilities. He testified that one of the errors he had to amend was caused by him being incorrect about how much of NBSP he owned and explained that he was not trying to hide anything.

Ray was then asked about differences between his 2018 financial statement and his April 2024 net-worth affidavit. He agreed that he listed the purchase price of the property at $2.1 million in 2018 but listed it as $1.5 million in his 2024 affidavit. He also admitted that in 2018 he claimed a net worth of $2.1 million and in 2024 was claiming a negative net worth. He explained that the 2018 statement was a joint statement and included some of his wife's assets.

Ray was also asked about a personal financial statement he submitted to his bank in 2023, during the pendency of trial, to obtain a loan for NBSP. He admitted that he did not include the contingent guarantor liabilities on that statement. He agreed that he claimed a net worth of $3,976,700. He testified that although he was the only individual listed on that statement that it was still a joint statement. He explained that the difference was caused by selling properties and taking on new liabilities.

Appellees then rested and appellants called Craig, a certified public accountant with fifty years' experience. She explained that she did not know Ray and was not familiar with NBSP prior to being asked to review the financial documents about two weeks prior to the hearing. She testified that she prepared a letter after reviewing the financial files for NBSP and Ray. She explained that she also submitted an amended letter after realizing that one of the financial records she relied on for the first letter was from the wrong year. She testified that "worth" is "the going rate for a willing buyer and a willing seller," and that "net worth" is "what is left after everything else has been satisfied." When asked whether the trial court should base

7

the value of the property off the appraisal value or the cost basis, she answered that she could not tell the court what to do but that whichever value it uses, it would need to subtract "certain items" to get a net value. She testified that she uses cost basis when reporting to the IRS. She also responded in the affirmative when asked if cost basis would be used every time when following "GAAP rules."

She explained that personal financial statements are form documents prepared by individuals to obtain loans from banks. She testified that Ray's personal financial statement, correctly included the contingent guarantor liability because to not include it would "be defrauding the bank." She also testified that if she was doing a personal statement, she would include the contingent guarantor liability as "a footnote." She admitted however that she did not have personal information about Ray's financials and was basing her opinion of the correctness of his personal financial statement on her own experience filling out the same form for herself to obtain a bank loan. She admitted that she had no knowledge of how contingent liabilities should be treated under Texas law and was not stating an opinion on whether the trial court should consider them, but rather was only opining that they were properly included in Ray's statement to the bank. She testified that her report was a "calculation of things that should be considered in arriving at net worth," which include appraisal values for the property.

When asked if her calculations conformed with GAAP, she replied that "GAAP has nothing to do with this." She explained that GAAP applies when doing an audit but not to the personal financial statement that Ray provided. She also admitted that her calculations relied on the balance sheets she was supplied and that she did not independently confirm the validity of the numbers she was provided. She agreed that "the information provided by Mr. Hickman for the valuation of the company" used GAAP.

The day after the hearing, the trial court signed an order granting appellees' contest to appellants' net-worth affidavits and set bond at $2,099,500 for NBSP and at $853,500 for Ray. The trial court made the following findings and conclusions:

- Appellants failed to present credible, reliable evidence for the Court to determine Appellants' net worth and the bonds posted by Appellants are insufficient to secure the Appellees' judgment pending appeal.

- NBSP has assets worth $7,404,000, liabilities totaling $3,205,000, and a net worth of $4,199,000.

- Ray has assets worth $2,947,000, liabilities totaling $1,240,00, and a net worth of $1,707,000.

The trial court noted that it considered all the evidence and that any "values reflected in evidence but not included in Exhibit A and B attached hereto were disregarded as not appropriate for [Rule] 24.2 calculation." The trial court attached two pieces of paper that contained the detailed assets and liabilities that the trial court considered in completing each calculation.

On July 29, 2024, appellants filed their Rule 24.4 motion requesting that we review the trial court's order setting supersedeas security.[1] Appellees filed a response and appellants filed a reply.

## STANDARD OF REVIEW

On any party's motion, we review the sufficiency or excessiveness of the amount of security and the trial court's exercise of discretion in setting the amount of security. *See* Tex. Civ. Prac. & Rem. Code § 52.006(d); Tex. R. App. P. 24.4. We review a trial court's

---

[1] Appellants attached to their motion affidavits from experts in supersedeas bonds and banking professionals that were acquired after the trial court's order set the bond amount. The affidavits reflect that the appellants have been unable to secure supersedeas bonds in the amounts set.

determination of the amount of security for an abuse of discretion. *See G.M. Houser*, 204 S.W.3d at 840. However, we review questions of law de novo because a trial court has no discretion in determining what the law is or applying the law to the facts and therefore abuses its discretion if it misinterprets or misapplies the law. *See Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A court abuses its discretion when it acts without reference to any guiding rules or principles. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). In assessing a bond, the trial court abuses its discretion if the evidence is legally or factually insufficient to support its findings. *G.M. Houser*, 204 S.W.3d at 840.

To show the trial court abused its discretion by basing its findings on legally insufficient evidence, judgment debtors must show the evidence conclusively establishes, as a matter of law, all vital facts in support of their position. *Id.* at 840-41. In determining whether the evidence is legally sufficient to support the trial court's determination of net worth, we consider all of the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 910 (Tex. App.—Houston [14th Dist.] 2005, order). We must credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *See Ramco*, 171 S.W.3d at 910. We must determine whether the evidence before the court would allow reasonable and fair-minded people to find the facts at issue. *See id.*

In reviewing the factual sufficiency of the evidence to support the trial court's finding of net worth, we examine the entire record, considering the evidence both in favor of and contrary to the challenged finding. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per

10

curiam); *Ramco*, 171 S.W.3d at 910. We set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

The trial court, as factfinder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Ramco*, 171 S.W.3d at 910. We may not substitute our judgment for the fact finder's even if we would reach a different answer on the evidence. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). Further, trial courts are "afforded broad discretion in determining the amount and type of security and the sufficiency of the sureties and may make 'any order necessary to adequately protect the judgment creditor against loss or damage that the appeal might cause.'" *Miller v. Kennedy & Minshew, Pro. Corp.*, 80 S.W.3d 161, 164 (Tex. App.—Fort Worth 2002, op. on motion) (citing Tex. R. App. P. 24.1(e), 24.3(a)(1)).

## DISCUSSION

*NBSP's net worth*

NBSP contends that the trial court erred by not calculating its net worth in accordance with GAAP. Specifically, it contends that the trial court abused its discretion by (1) using fair market value instead of cost basis to calculate its total fixed assets; and (2) not including its total liabilities in the calculation. Appellees contend that it was within the trial court's discretion to discredit the witness testimony regarding cost basis, and thus, it was within the trial court's discretion to use the market values to set bond at a lower level than it otherwise could, which would have been the full amount of the $7,000,002 judgment. *See* Tex. Civ. Prac. & Rem. Code § 52.006(a); Tex. R. App. P. 24.2(a)(1).

11

"Testimony from interested witnesses may establish a fact as a matter of law only if the testimony could be readily contradicted if untrue, and is clear, direct, and positive, and there are no circumstances tending to discredit or impeach it." *Ramco*, 171 S.W.3d at 911. While a factfinder cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted, the factfinder is the sole judge of credibility and "may disregard even uncontradicted and unimpeached testimony from disinterested witnesses." *City of Keller*, 168 S.W.3d at 819–20. Here, we cannot conclude that the trial court's implicit credibility determinations regarding the debtor's evidence were unreasonable or an abuse of discretion. Appellants contend that their evidence was uncontroverted. We disagree. The evidence included six different valuations of the property, which all came from appellants or their witness. The witnesses were unsure and inconsistent about the purchase price of the property to support the cost-basis analysis. There was testimony that the net-worth affidavits had to be amended after appellees pointed out errors to appellants during their depositions. Additionally, the underlying case involves a finding of fraud committed by appellants against appellees, and the trial court had already issued a protective order against appellants based on concerns that arose upon discovery of business loans either made or recorded days before trial.

The evidence is sufficient to support the trial court's finding that it was unable to determine NBSP's net worth based on the lack of sufficient credible evidence establishing total assets.[2] *See Crowder*, 2022 WL 2291213, at *7 (holding that trial court did not abuse its discretion by striking net worth affidavit based on "discrepancies and uncertainties regarding the

---

[2] Because we conclude the evidence supports that the trial court could not determine NBSP's net worth because it could not determine total assets based on NBSP's evidence, we do not reach NBSP's contention regarding the trial court's finding regarding liabilities.

12

accuracy of the items on the net-worth statement"). Thus, the trial court did not abuse its discretion by raising NBSP's bond. Indeed, "when the trial court is unable to determine a specific net-worth amount from the evidence, it is not an abuse of discretion to set the bond in the default amount dictated by Rule 24.2(a)(1)." *Id.* Here, the default amount would have been the full amount of the "compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment." Tex. R. App. P. 24.2(a)(1).

Notably, the trial court did not set the bond at the default amount, which we have concluded it could have. Instead, it set it lower based on a market value estimate provided by appellants. In a sub-issue, NBSP contends that it was error for the trial court to use market value to calculate the bond amount. Assuming without deciding that it was error to use market value, in the absence of sufficient evidence to establish the parties' net worth, the proper calculation would have been the significantly higher statutory default amount of the total compensatory damages, costs, and estimated interest. *See* Tex. R. App. P. 24.2(a)(1). Accordingly, any error that occurred from the trial court setting the bond amount lower than the amount supported by the record would be harmless. *See* Tex. R. App. P. 44.1(a) (prohibiting reversal of trial court judgment absent showing that trial court error "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals"); *Crowder*, 2022 WL 2291213, at *7 (concluding that "when the trial court is unable to determine a specific net-worth amount from the evidence, it is not an abuse of discretion to set the bond in the default amount dictated by Rule 24.2(a)(1)").

We overrule appellants' issue as it relates to the trial court's order raising the amount of the supersedeas bond that NBSP is required to post.

13

*Ray's net worth*

Ray contends that the trial court abused its discretion by failing to include his total liabilities to determine his net worth. For the same reasons discussed above, we conclude that the trial court did not abuse its discretion in concluding that it did not have sufficient credible evidence to determine Ray's net worth. The trial court was presented with six different valuations for the property. Further, the evidence showed that Ray had valued the cost basis of the property differently over the years and that at his deposition he did not know the purchase price of the property. Additionally, there were inconsistencies between Ray's financial statements. Although Ray did offer explanations for the inconsistencies, the evidence was sufficient to support the trial court's credibility determinations as factfinder. *See Ramco*, 171 S.W.3d at 910. We will not substitute our judgment for that of the fact finder. *See Maritime*, 971 S.W.2d at 407. Thus, we conclude the trial court did not abuse its discretion by raising his bond amount when it was unable to determine net worth based on his provided evidence. *See Crowder*, 2022 WL 2291213, at *7.

Ray raises the same sub-issue as NBSP regarding the trial court's decision to set his bond based on a market value estimate after determining it could not determine his net worth. Assuming without deciding that the trial court erred by using a market-value estimate, we again conclude that any error from the trial court's setting the bond amount lower than the statutory default would be harmless. *See* Tex. R. App. P. 44.1(a); *Crowder*, 2022 WL 2291213, at *7.

We overrule appellants' issue as it relates to the trial court's order raising the amount of the supersedeas bond that Ray is required to post.

14

**CONCLUSION**

Having overruled appellants' issue in its entirety, we deny their motion, affirm the trial court's July 10, 2024 order setting supersedeas bond, and lift our July 29, 2024 temporary stay of that order.

It is ordered on November 14, 2024.

Before Chief Justice Byrne, Justices Triana and Kelly